IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FIREFIGHTER BRAD SPEAKMAN, RET.; SENIOR FIREFIGHTER TERRANCE TATE, RET.; LIEUTENANT JOHN CAWTHRAY; KELLI ANN STARR-LEACH as Administratrix of the Estate of LIEUTENANT CHRISTOPHER M. LEACH and as a guardian ad litem of A.L. and M.L.; BRENDAN LEACH; LAURA FICKES, individually and as Executrix of the Estate of SENIOR FIREFIGHTER JERRY W. FICKES, JR.; BENJAMIN FICKES, JOSHUA FICKES; SIMONE CUMMINGS as Administratrix of the Estate of SENIOR FIREFIGHTER ARDYTHE D. HOPE; ARYELLE HOPE; ALEXIS LEE; and ARDAVIA LEE<br><br>               Plaintiffs,<br><br>               v.<br><br>DENNIS P. WILLIAMS, individually; JAMES M. BAKER, individually; ANTHONY S. GOODE, individually; WILLIAM PATRICK, JR., individually; and THE CITY OF WILMINGTON, a municipal corporation,<br><br>               Defendants. | C.A. No. 18-1252 (MN) |

**MEMORANDUM OPINION**

Thomas C. Crumplar, Raeann C. Warner, JACOBS & CRUMPLAR, P.A.; Stephen J. Neuberger, Thomas S. Neuberger, THE NEUBERGER FIRM, P.A. – attorneys for Plaintiff

Mark L. Reardon, Brian E. O'Neill, ECKERT SEAMANS CHERIN & MELLOTT, LLC, Wilmington, DE – attorneys for Defendant James M. Baker

September 30, 2019
Wilmington, Delaware

*[signature: Maryellen Noreika]*

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court are the objections of Plaintiffs (D.I. 65) ("Plaintiffs' Objections") and Defendant James M. Baker ("Baker") (D.I. 61) ("Baker's Objections") to Magistrate Judge Thynge's Report and Recommendation (D.I. 57, "the Report") relating to Baker's Motion to Dismiss (D.I. 34). The Report recommends granting Baker's motion to dismiss based on the statute of limitations, 10 Del. C. § 8119[1], and dismissing the Complaint against him with prejudice. The Court has reviewed the Report, Plaintiffs' objections and Baker's response thereto (D.I. 74) ("Baker's Response"), Baker's objections and Plaintiffs' responses (D.I. 79-82) ("Plaintiffs' Responses"),[2] and has considered *de novo* the relevant portions of Baker's motion to dismiss (D.I. 34), his opening brief (D.I. 35), and Plaintiffs' corresponding answering brief (D.I. 46), as well as papers submitted with each. Fed. R. Civ. P. 72(b)(3). The Court has also afforded reasoned consideration to any unobjected to portions of the Report. *EEOC v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017). For the reasons set forth in this opinion, the objections of Plaintiffs and Baker are each SUSTAINED-in-PART and OVERRULED-in-PART, the Report is ADOPTED as MODIFIED below as to Baker, and Baker's motion to dismiss is GRANTED, and the Complaint as to Baker is dismissed without prejudice.

---

[1] The Report mistakenly cites to 10 Del C. § 8116 in its conclusion, but correctly cites to 10 Del C. § 8119 (the statute setting the statute of limitations for personal injury claims) in the balance of its pages.

[2] Magistrate Judge Thynge imposed a ten-page limit on "[a]ny response by plaintiffs to a Defendant's objections" (D.I. 60 at 5), and Plaintiffs neither requested nor received permission from the Court to exceed that limit. Nevertheless, they purport to "incorporate[] [many pages from other responses] by reference." (D.I. 82 at 10 n.4). In an effort to resolve these issues expeditiously, the Court has reviewed all of Plaintiffs' responses. It will, however, not countenance future failures to abide by Court orders.

## I. BACKGROUND

The Report sets forth a detailed description of the factual and procedural background of this matter. (D.I. 57 at 2-12). The parties have not objected to any of those sections of the Report and the Court's reasoned consideration finds no clear error. The Court adopts those sections and incorporates them here.

As noted in the Report, this matter concerns the death of three Wilmington Fire Department ("WFD") firefighters and substantial injury of three other firefighters as a result of a house fire that occurred on September 24, 2016 in Wilmington, DE. Plaintiffs allege that the injuries sustained were proximately caused by the policies and actions of, *inter alia*, Baker, regarding "rolling bypass," which Plaintiffs contend violated their substantive rights guaranteed by the Fourteenth Amendment of the United States Constitution. Baker filed a motion to dismiss for failure to state a claim under any of Plaintiffs' three counts: (1) State-Created Danger; (2) Shocks the Conscience; and (3) Maintenance of Policies, Practices, and Customs. Baker also asserts that he is entitled to qualified immunity and that Plaintiffs' action was untimely. Plaintiffs filed an answering brief in opposition and the Magistrate Judge issued the Report on August 28, 2019. The Report makes a number of findings related to Baker, but the conclusion ultimately recommends dismissing the case in its entirety based only on statute of limitations grounds. (D.I. 57 at 37).

On September 11, 2019, both Plaintiffs and Baker filed objections to the Report, (D.I. 61, 65). On September 25, 2019, each responded to the other's objections. (D.I. 74, 79-82).

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded factual allegations as true and view them in the

light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "To survive a motion to dismiss, [however,] a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

      **B.**     **<u>Review of Reports and Recommendations on Dispositive Motions</u>**

The power invested in a federal magistrate judge varies depending on whether the issue is dispositive or non-dispositive. "Unlike a nondispositive motion (such as a discovery motion), a motion is dispositive if a decision on the motion would effectively determine a claim or defense of a party." *City of Long Branch*, 866 F.3d at 98-99 (citations omitted). Under this standard, a motion to dismiss under Rule 12(b)(6) is clearly dispositive.

For reports and recommendations issued regarding dispositive motions, Rule 72(b)(3) of the Federal Rules of Civil Procedure instructs that "a party may serve and file specific written objections to the proposed findings and recommendations" "[w]ithin 14 days" and "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *See also* 28 U.S.C. § 636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). When no timely objection is filed, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee's notes to 1983 amendment. "[B]ecause a district court must take some action for a report and recommendation to become a final order and because '[t]he authority and the responsibility to make an informed, final determination . . . remains with the judge," however, district courts are still obligated to apply "reasoned consideration" in such situations. *City of Long Branch*, 866 F.3d at 99-100 (citing *Mathews v. Weber*, 423 U.S. 261, 271 (1976); *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)).

### III.     DISCUSSION

As an initial matter, the Court must determine whether the parties' objections were both timely and "specific." Fed. R Civ. P. 72(b)(2). Both sets of objections were timely, as they were filed within the requisite fourteen-day period. So, too, were the parties' responses to their respective objections. Baker's Objections and Response are also specific – each of the submissions specifically identifies the bases of the dispute and references relevant counts and language from the Report and Plaintiffs' Objections. Plaintiffs' Objections and Responses, however, are not. Plaintiffs' Objections contains a morass of non-specific protestations intermixed with one mention of one count (Count I) and one specific finding they dispute. (D.I. 65 at 1-2, 9 n.9). Plaintiffs' Response to Baker's Objections is more specific, at least until it attempts to incorporate

4

unspecified arguments from Plaintiffs' responses regarding other defendants. *See supra* note 2. As a matter of judicial efficiency and so all matters related to Baker and this motion to dismiss may be addressed, however, the Court has considered all issues in Plaintiffs' Responses and Objections that are specifically targeted to Baker as well as Plaintiffs' objection in footnote 6 of D.I. 64, which mentions Baker by name and identifies the issue being raised.

### A. Count I – State-Created Danger

Plaintiffs' Complaint fails to allege facts sufficient to assert a claim against Baker for Count I.[3] Count I of the Complaint does not address individual defendants,[4] but rather addresses "Defendants" as a group. (D.I. 1 ¶¶ 481-498). The Report, thus, similarly addresses the defendants as a group, finding that Plaintiffs' Complaint fails to satisfy three of the four elements of a state-created danger claim – those requiring: (1) the harm be "foreseeable and fairly direct"; (2) the existence of a "special relationship"; and (3) use of "authority to create an opportunity for danger" – but satisfies the fourth: (4) alleging conduct that "shocks the conscience" under a deliberate indifference standard. (D.I. 57 at 15-21). As noted above, in its conclusions, the Report does not recommend dismissal of Count I, specifically, as to Baker because it recommends dismissal of all counts against him based on the statute of limitations. (D.I. 57 at 37).

Baker objects to the Report's lack of specific recommendation as to Count I, not to its analysis. (D.I. 61 at 2). Although Plaintiffs do not clearly reference particular elements of Count I in their Objections, they argue that the Report misapprehends the proximate cause and foreseeability issues in this case, which is the essence of Count I's "foreseeable and fairly direct"

---

[3] No party objects to the standard for "state-created danger" set forth in the Report. (D.I. 57 at 16). After reasoned consideration and finding no clear error, the Court adopts it in full and incorporates it here.

[4] In Count I, Plaintiffs' specifically refer only to Defendant Goode by name. (D.I. 1 ¶ 489).

5

inquiry. (D.I. 65 at 1-2, 7-8). Thus, the Court considers Plaintiffs to object to the Report's finding regarding the "foreseeable and fairly direct" element and Baker to object solely to the Report's ultimate conclusion, or lack thereof, regarding whether Plaintiffs have sufficiently stated a claim against him for Count I.

1. <u>Foreseeable and Fairly Direct</u>

The Report finds that Plaintiffs do not satisfy the "foreseeable and fairly direct" requirement of a state-created danger claim because, although the "foreseeability" aspect was sufficiently pleaded, the Complaint "fail[s] to allege sufficient facts to meet the [fairly direct] requirement." (D.I. 57 at 17-18). As explained below, the Court agrees.

Neither party objects to the Report's conclusion that the "foreseeability" requirement is met "because the State-actors had actual knowledge and awareness of risk associated with rolling bypass."[5] (D.I. 57 at 17). Finding no clear error after reasoned consideration, the Court adopts this portion of the Report.

In regard to the "fairly direct" requirement, the Report finds that the facts alleged by Plaintiffs are insufficient as to all defendants because "[t]he rolling bypass policy and/or inadequate staffing were not the direct catalyst for the harm. This fire was the result of arson committed by a third party." (D.I. 57 at 18). Plaintiffs object that this finding is legal error, arguing the Report "ignored" Third Circuit and District of Delaware opinions indicating a state official can

---

[5] Plaintiffs argue that, because "it was reasonably foreseeable that an accidental or arson fire would occur in the city" the causal chain between Baker's actions and the harms suffered was not broken. (D.I. 65 at 7-9 (modifications omitted)).

6

be held liable for the actions of third parties, as well as fundamental principles of proximate causation, namely that there can be more than one proximate cause of an injury.[6] (D.I. 65).

"To fulfill the 'fairly direct' requirement of the state-created danger claim, the plaintiff must plausibly allege that state officials' actions 'precipitated or were the catalyst for' the harm for which the plaintiff brings suit." *Henry v. City of Erie*, 728 F.3d 275, 285 (3d Cir. 2013) (quoting *Morse*, 132 F.3d at 910). "'Precipitate,' in turn, means 'to cause to happen or come to a crisis suddenly, unexpectedly, or too soon." *Id.* (quoting *Webster's Third New International Dictionary* 1784 (1993); citing *The Random House Dictionary of the English Language* 1521 (2d ed. 1987) (defining "precipitate" as "to hasten the occurrence of; bring about prematurely, hastily, or suddenly"); *id.* at 325 (defining "catalyst" as "a person or thing that precipitates an event or change")). "Thus, it is insufficient to plead that state officials' actions took place somewhere along the causal chain that ultimately led to the plaintiff's harm." *City of Erie*, 728 F.3d at 285. In other words, in order to sufficiently plead that Baker is liable, there cannot be "too many links in the causal chain after [Baker] acted and before tragedy struck." *Id.* at 285-86.

Baker left his position as mayor in January 2013, more than three and one-half years before the September 24, 2016 fire. (D.I. 57 at 2). During that period, as Plaintiffs' Complaint details, various intervening events occurred. For example:

- A new mayor, Dennis P. Williams ("Williams"), was elected and a new fire chief, Anthony S. Goode ("Goode") was appointed;[7]

- Williams and Goode enacted a similar, but "new policy of 'conditional company closures'";

---

[6] The Court notes that although the Report does not specifically cite the cases Plaintiffs address, it does address the concept of state liability for third party actions (*e.g.*, D.I. 57 at 16). The Report recommends that the causal chain was severed.

[7] Both Williams and Goode are also defendants in this case. (D.I. 1).

7

- Williams and Goode further understaffed the WFD by delaying the filling of vacancies and transferring numerous firefighters from fire suppression to administrative roles;

- The Wilmington City Council passed legislation to mandate the hiring of more firefighters and address other issues of fire safety;

- Williams and Goode refused to comply with the new legislative requirements;

- "[T]he City [began] to experience rolling bypass more often than not."

(D.I. 1 ¶¶ 26, 28, 197-99, 204, 226-58). According to Plaintiffs, these changes "continued to make, and by themselves independently made, the WFD an unmanageably dangerous place, and an even more dangerous place than it previously had been under defendant[] Baker." (D.I. 1 ¶ 180). In addition to all of these intervening events related to WFD, the fire that ultimately harmed Plaintiffs was the result of arson by a third party. (D.I. 57 at 8).

Although the actions of a third party may in some circumstances be insufficient to sever a causal chain and it is certainly true that an injury can have multiple causes, such injury must still be sufficiently linked to the alleged acts of the defendant for a complaint to be sufficiently pleaded. *See, e.g.*, *City of Erie*, 728 F.3d at 283 ("State actors are not liable every time their actions set into motion a chain of events that result in harm." (citing *Martinez v. State of California*, 444 U.S. 277, 281 (1980))). Three and one-half years expired from the time the Complaint alleges Baker did anything to create or was in a position to do anything regarding the circumstances that resulted in Plaintiffs' harm, and the fire that caused those harms. During that period, a litany of intervening events occurred that altered how the WFD operates, the availability of personnel and equipment to fight fires, and the persons in charge of decision making for firefighting in Wilmington (*i.e.* a new mayor was elected, and a new fire chief appointed). The sheer number of links in the causal chain between the actions Baker is alleged to have taken and the harms suffered, as well as the

lack of immediacy between those actions and the harms suffered, compels the Court to conclude that Plaintiffs have failed to allege that Baker precipitated or was a catalyst of these harms. *See, e.g.*, *City of Erie*, 728 F.3d at 284-86 (granting defendants' motion to dismiss because their actions "were separated from the ultimate harm by a lengthy period of time [– less than four months – ] and intervening forces and actions"). In short, the Complaint merely alleges that Baker's "actions took place somewhere along the causal chain that ultimately led to the . . . harm." *Id.* at 285. As the Third Circuit has instructed, this is insufficient.

2. Special Relationship

The Report recommends that "Plaintiffs fail to allege sufficient facts demonstrating a special relationship to support State-created danger" because "there was no confinement or restraint on any personal liberty." (D.I. 57 at 20). As no party objects to the Report on this point, and finding no clear error after reasoned consideration, the Court adopts the Report's analysis and conclusion regarding the "special relationship" requirement of Count I in full.

3. Use of Authority to Create an Opportunity for Danger

In regard to the "use of authority to create an opportunity for danger" requirement, the Report finds that "Plaintiffs' allegations of harm fail to meet this element under the doctrine of State-created danger" because "rolling bypass was not the direct cause nor the but for cause of the harm to Plaintiffs." (D.I. 57 at 20-21). Neither side objects to the Report on this point either[8], and

---

[8] As noted, Plaintiffs object to the Report's proximate causation analysis; however, the "use of authority to create an opportunity for danger" "element is satisfied . . . only where the state's action was the but for cause of the danger faced by the plaintiff." (D.I. 57 at 20-21 (citing *Kauchner v. County of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006))). Since Plaintiffs' objections make no arguments directed to but-for causation, the Court finds they made no objections regarding this element of Count I.

9

the Court finds no clear error in the analysis after reasoned consideration. Thus, the Court adopts this portion of the Report as well.

Because Plaintiffs have failed to allege sufficient facts to satisfy the motion to dismiss standard for three of the four elements of a state-created danger, Plaintiffs have failed to state a claim for relief against Baker for Count I.[9]

### B. Count II – Shocks the Conscience

The Court also finds that Plaintiffs have failed to state a claim against Baker under Count II.[10] In addition to any other requirements for a claim, a defendant in a civil rights action "must have personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423 F. 3d 347, 352 (3d Cir. 2005). This may be shown "through allegations of personal direction or actual knowledge and acquiescence." *Id.*; *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).[11] The Third Circuit has held that "a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." *Boykins v. Ambridge Area School District*, 621 F.2d 75, 80 (3d Cir. 1980). In the instant matter, Plaintiffs allege that time and location to be

---

[9] The Court finds no need to address the Report's findings regarding the fourth element of the state-created danger doctrine (whether Baker's conduct shocks the conscience). Every element of the claim must be adequately pleaded. *See, e.g., City of Erie*, 728 F.3d at 282 (stating the court "needn't look further than the first element of the state-created danger claim" where that element was insufficiently pleaded).

[10] The Report does not actually consider whether Baker's conduct "shocks the conscience. (D.I. 57 at 18-19, 21-23). It does, however, discuss the requirement that Baker had to have been personally involved in the conscience-shocking activity to be held liable. (D.I. 57 at 26-27). Although Baker argues the Report implicitly finds that his conduct was not conscience-shocking, (D.I. 61 at 4-5), because the Court finds the "personal involvement" facet dispositive, it does not consider whether Baker's alleged conduct "shocks the conscience."

[11] The Court adopts the Report's articulation of the "personal involvement" standard and repeats it here only for convenience. Neither party objects to this facet of the Report and the Court finds no clear error after reasoned consideration.

September 24, 2016 at 2:56 a.m. at 1927 Lakeview Road, Wilmington, D.E. and allege that Baker, amongst others, was responsible for the institution and continued use of rolling bypass, despite evidence to the contrary of its effectiveness, which caused the injuries they sustained. (D.I. 57 at 26-27).

Based on this, the Report recommends that "Plaintiffs['] factual allegations are insufficient to support personal involvement in relation to Mayor Baker" because "[a]t the time of this incident, Mayor Baker . . . had not served in [his] official capacit[y] in almost three years" and [t]here is no factual support alleged by Plaintiffs that . . . Mayor Baker . . . had any personal involvement in the policies, decisions[,] or practices of the subsequent administration nor the events that occurred in 2016." (D.I. 57 at 27). Similar to his objections regarding Count I, Baker argues that this finding is accurate and Count II should be dismissed against him. (D.I. 61 at 6-7). Plaintiffs, on the other hand, object that they have met the requisite standard by "factually alleg[ing] that [Baker] created, implemented, and knowingly lied to the legislature and the public in order to hide the known dangers of their rolling bypass policy." (D.I. 64 at 9 n.6). They further argue that the claim should persist against Baker because "[i]t is neither unrealistic nor fanciful, when one does not take an unduly crabbed reading of the Complaint, to expect discovery to also demonstrate personal involvement in continuing or modifying their policy of rolling bypass." (D.I. 64 at 9 n.6). They also state it is their "understanding that . . . Baker [is] presently on the City defendant's payroll, either as [a] current employee[] or consultant[]." (D.I. 64 at 9 n.6).

Although Plaintiffs now speculate as to Baker's involvement, the Complaint does not allege that Baker had any personal involvement in the events of September 24, 2016. Nor, as already detailed, does the Complaint sufficiently allege that Baker was involved in the circumstances, including policies, decisions, or practices, that precipitated those events. Whether

it is "unrealistic" or "fanciful" to expect discovery to demonstrate Baker's personal involvement in continuing or modifying the rolling bypass policy during the Williams administration is immaterial, because the Complaint does not allege that such involvement occurred. Additionally, Plaintiffs' new allegation that Baker is on the City's current payroll does not appear in the Complaint and, even if it did, the Court does not see, and the Complaint fails to articulate, how Baker's involvement in city government in 2019 indicates he was personally involved in events that occurred in 2016. *See, e.g.*, *Lopez v. Corr. Med. Servs., Inc.*, No. 11-1591, 2012 WL 4373462, at *2 (3d Cir. Sep. 26, 2012) (dismissing claims in § 1983 deprivation of constitutional rights action based on lack of personal involvement because defendants had only come in contact with plaintiff after alleged injury occurred). As a result, Plaintiffs have failed to sufficiently allege that Baker was personally involved in the events leading to the harm they allege they sustained under Count II.

## C. Count III – Maintenance of Policies, Practices, and Customs

Count III is inapplicable to Baker because it is a *Monell* claim and he is not sued in his official capacity. The Report implicitly reaches this conclusion, neither party objects, and the Court finds no clear error after reasoned consideration. "Under a §1983 claim, local governing bodies and officials, acting in their official capacity, may be sued directly . . . where, as alleged here, the purported unconstitutional action implements or executes a policy, ordinance, regulation, or decision officially adopted or promulgated by them." (D.I. 57 at 23-24 (citing *Monell v. Dep't of Soc. Servs. Of the City of New York*, 436 U.S. 658, 690 (1978)). "Baker is sued only in his individual capacity," (D.I. 1 ¶ 27), and "is no longer in office, nor hold[s] any official position[],"

(D.I. 57 at 24 n.156). Thus, the Court adopts the Report's analysis and conclusions for Count III; the count is inapplicable to Baker.[12]

### D. Qualified Immunity

Qualified or good faith immunity operates as an affirmative defense for the benefit of government officials. *Harlow v. Fitzgerald*, 457 U.S. 800, 808 (1982). It is immunity from suit rather than merely a defense to liability, *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and "shield[s] officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Such performance is unreasonable, and the immunity disappears, when the facts alleged by a plaintiff show a violation of a constitutional right and the right at issue was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Unless a plaintiff's allegations sufficiently assert a violation, a defendant pleading qualified immunity is entitled to dismissal before discovery. *Pearson*, 555 U.S. at 236; *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996).[13]

The Report does not consider whether Baker is entitled to qualified immunity. As explained above, however, Plaintiffs have not adequately alleged a violation of a constitutional right against Baker. As such, the Court need not determine whether Plaintiffs can satisfy the other qualified immunity prong; under the facts currently alleged, Baker remains entitled to qualified immunity. *See Pearson*, 555 U.S. at 237.

---

[12] Baker, similarly, "interprets Count III of the Complaint as a *Monell* claim asserted against the City of Wilmington, and not against him as an individual defendant." He makes arguments regarding this count only in the alternative (*i.e.* if the Court determines this is not a *Monell* claim). (D.I. 61 at 1 n.3).

[13] Neither party objects to the Report's statement of the qualified immunity standard (D.I. 57 at 28-29) and the Court finds no clear error after reasoned consideration. The Court adopts that standard in full, though limited portions are stated and clarified here for convenience.

### E. Statute of Limitations

Finally, Plaintiffs object to the Report's recommendation that all counts against Baker be dismissed based on expiration of the statute of limitations. (D.I. 65 at 9 n.9). Plaintiffs argue, in essence, that the statute of limitations clock did not begin until the fire, and their Complaint was timely because it was filed within two years of that fire. (D.I. 65 at 9 n.9). Baker, on the other hand, argues that the Report's conclusion was correct, and the statute of limitations clock began running when he left office in 2013. (D.I. 61 at 6; D.I. 74 at 7-8). Finding that the cause of action accrued, and the statute of limitations began running only once Plaintiffs were injured in the fire, the Court holds that Plaintiffs' Complaint was timely.

Section 1983 suits are subject to the state statute of limitations period for personal injury claims. *Owens v. Okure*, 488 U.S. 235, 245-50 (1989). In Delaware, that period is two years. *10 Del. C.* § 8119. Federal law, however, dictates when a § 1983 claim accrues; that is, when the statute of limitations clock begins to run. *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998). The Third Circuit instructs that "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Id.* (internal citations omitted). In other words, the statute of limitations clock begins:

> when a plaintiff has a 'complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.' *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). As the court in *Wallace* explained, 'the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.' *Id.* at 391.

*Dique v. N.J. State Police*, 603 F.3d 181, 185-86 (3d Cir. 2010); *see also Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 860-61 (3d Cir. 2014) (quoting *Dique*). Thus, for the statute of limitations to bar Plaintiffs' § 1983 personal injury claims, it must be apparent from the face of the complaint that Baker's alleged unlawful conduct *and* the harm suffered by Plaintiffs occurred

more than two years before this suit was filed. *See Buchholz v. Midwestern Intermediate Unit IV*, 128 Fed. App'x. 890, 893-95 (3d Cir. 2005) (holding district court did not abuse its discretion or commit reversible error by instructing jury as much); *see also Fleckenstein v. Crawford*, No. 1:14-cv-1085, 2015 WL 5829758, *3-*4 (D. Pa. Oct. 1, 2015).[14]

Here, the statute of limitations did not accrue until at least September 24, 2016. Plaintiffs seek damages solely for injuries related to the fire (*e.g.*, death, burns, PTSD, burial costs, loss of wages, etc.). (D.I. 1 ¶¶ 460-63). In *Fleckenstein*, a § 1983 suit where a man who was accidentally released from prison killed a woman several weeks after his release, the suit was subject to a two-year statute of limitations and plaintiffs filed suit within two years of the woman's murder but more than two years after the man's release. 2015 WL 5829758. Yet the court found the claims were not time-barred because the plaintiffs "had no reason to know of the injury – the death of [the woman] – before [she] was killed." *Id.* at *4. Similarly, Plaintiffs had no reason to know of the harm they suffered until the fire occurred. Since Plaintiffs filed suit within two years of that date, their suit is not time-barred under the applicable statute of limitations.

---

[14] In *Buchholz*, the Third Circuit held the district Court did not abuse its discretion or commit reversible error in instructing the jury regarding the defendant's statute-of-limitations defense for plaintiff's state-created danger claim, to which a two-year statute of limitations applied. Those instructions consisted, in relevant part, of the following:

> This case was brought-it was filed in this Court on September 26, 2001. Thus if you find that none of defendants' conduct occurred after September 26, 1999, *and* if you find that plaintiff was not injured after September 26, 1999, then you must find that plaintiff's claims are barred by the statute of limitations.

128 Fed. App'x. at 893 (emphasis added). The Third Circuit further commented that the district court's "instructions operated to deem [the p]laintiff's claim timely so long as any element of her state created danger claim fell within the requisite limitations period." *Id.* at 894.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the objections of Plaintiffs and Baker are each SUSTAINED-in-PART part and OVERRULED-in-PART, the Report is ADOPTED as MODIFIED herein as to Baker. Baker's motion to dismiss is GRANTED, and the Complaint as to Baker is dismissed without prejudice. An appropriate order will follow.