IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FIREFIGHTER BRAD SPEAKMAN, RET.; SENIOR FIREFIGHTER TERRANCE TATE, RET.; LIEUTENANT JOHN CAWTHRAY; KELLI ANN STARR-LEACH as Administratrix of the Estate of LIEUTENANT CHRISTOPHER M. LEACH and as guardian ad litem of A.L. and M.L.; BRENDAN LEACH; LAURA FICKES, individually and as Executrix of the Estate of SENIOR FIREFIGHTER JERRY W. FICKES, JR.; BENJAMIN FICKES; JOSHUA FICKES; SIMONE CUMMINGS as Administratrix of the Estate of SENIOR FIREFIGHTER ARDYTHE D. HOPE; ARYELLE HOPE; ALEXIS LEE; and ARDAVIA LEE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 18-1252 (MN) |
| v. | ) ) | |
| DENNIS P. WILLIAMS, individually; JAMES M. BAKER, individually; ANTHONY S. GOODE, individually; WILLIAM PATRICK, JR., individually; and THE CITY OF WILMINGTON, a municipal corporation, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Thomas C. Crumplar, Raeann C. Warner, JACOBS & CRUMPLAR, P.A.; Stephen J. Neuberger, Thomas S. Neuberger, THE NEUBERGER FIRM, P.A. – attorneys for Plaintiffs

C. Malcolm Cochran, IV, Chad M. Shandler, Nicole K. Pedi, RICHARDS, LAYTON & FINGER, P.A.– attorneys for Defendant Willie J. Patrick, Jr.

January 9, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court are the objections of Plaintiffs (D.I. 64) ("Plaintiffs' Objections") and Defendant Willie J. Patrick, Jr. ("Patrick") (D.I. 71) ("Patrick's Objections") to Chief Magistrate Judge Thynge's Report and Recommendation (D.I. 57, "the Report") relating to Patrick's Motion to Dismiss (D.I. 41). The Report recommends granting Patrick's motion to dismiss based on the statute of limitations, 10 Del. C. § 8119[1], and dismissing the Complaint against him with prejudice. (D.I. 57 at 37). The Court has reviewed the Report, Plaintiffs' Objections and Patrick's response thereto (D.I. 77) ("Patrick's Response"), Patrick's Objections and Plaintiffs' responses thereto (D.I. 79-82) ("Plaintiffs' Responses"),[2] and has considered *de novo* the relevant portions of Patrick's motion to dismiss (D.I. 41, 42, 48) and Plaintiffs' corresponding answering brief (D.I. 46) as well as papers submitted with each. Fed. R. Civ. P. 72(b)(3). The Court has also afforded reasoned consideration to any unobjected-to portions of the Report. *EEOC v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017). For the reasons set forth in this opinion, the objections of Plaintiffs and Patrick are each SUSTAINED-in-PART and OVERRULED-in-PART, the Report is ADOPTED as MODIFIED below as to Patrick, and

---

[1]     The Report mistakenly cites to 10 Del C. § 8116 in its conclusion, but correctly cites to 10 Del C. § 8119 (the statute setting the statute of limitations for personal injury claims) in the balance of its pages.

[2]     Chief Magistrate Judge Thynge imposed a ten-page limit on "[a]ny objections" filed by Plaintiffs or Defendants, as well as "[a]ny response by Plaintiffs to a Defendant's objections" and "[a]ny response by a Defendant to Plaintiffs' objections. (D.I. 60 at 5-6). Neither Plaintiffs nor Patrick requested or received permission from the Court to exceed that limit. Nevertheless, both purport to "incorporate[] [many pages from other responses or objections] by reference." (D.I. 82 at 10 n.4; D.I. 71 at 3 n.2, 4 n.4). In an effort to resolve these issues expeditiously, the Court has reviewed all of Plaintiffs' responses and the Objections incorporated by reference by Patrick. The Court will, however, not countenance future failures to abide by Court orders.

Patrick's motion to dismiss is GRANTED. The Complaint as to Patrick is dismissed without prejudice.

## I.     **BACKGROUND**

The Report sets forth a detailed description of the factual and procedural background of this matter. (D.I. 57 at 2-12). The parties have not objected to any of those sections of the Report and the Court's reasoned consideration finds no clear error. The Court therefore adopts those sections and incorporates them here.

As noted in the Report, this matter concerns the death of three Wilmington Fire Department ("WFD") firefighters and substantial injury of three other firefighters as a result of a house fire that occurred on September 24, 2016 in Wilmington, DE. Plaintiffs allege that the injuries sustained were proximately caused by the policies and actions of, *inter alia*, Patrick, regarding "rolling bypass," which Plaintiffs contend violated their substantive rights guaranteed by the Fourteenth Amendment of the United States Constitution. Patrick filed a motion to dismiss for failure to state a claim under any of Plaintiffs' three counts: (A) State-Created Danger; (B) Shocks the Conscience; and (C) Maintenance of Policies, Practices, and Customs. (D.I. 42 at 8-15). Patrick also asserted that he is shielded from the suit by (D) qualified immunity, (E) the applicable statute of limitations, and (F) the political question doctrine. (D.I. 42 at 15-18). Finally, Patrick alleged (G) that the family member plaintiffs lack standing. (D.I. 42 at 18-19). Plaintiffs filed an answering brief in opposition and the Magistrate Judge issued the Report on August 28, 2019 (D.I. 57). The Report makes a number of findings related to Patrick, but the conclusion ultimately recommends dismissing the case in its entirety based only on statute of limitations grounds. (D.I. 57 at 37).

On September 11, 2019, both Plaintiffs and Patrick filed objections to the Report, (D.I. 64, 71). On September 25, 2019, each responded to the other's objections. (D.I. 77, 79-82).

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "To survive a motion to dismiss, [however,] a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

## B.     Review of Reports and Recommendations on Dispositive Motions

The power invested in a federal magistrate judge varies depending on whether the issue is dispositive or non-dispositive. "Unlike a nondispositive motion (such as a discovery motion), a motion is dispositive if a decision on the motion would effectively determine a claim or defense of a party." *City of Long Branch*, 866 F.3d at 98-99 (citations omitted). Under this standard, a motion to dismiss under Rule 12(b)(6) is clearly dispositive.

For reports and recommendations issued regarding dispositive motions, Rule 72(b)(3) of the Federal Rules of Civil Procedure instructs that "a party may serve and file specific written objections to the proposed findings and recommendations" "[w]ithin 14 days" and "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *See also* 28 U.S.C. § 636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). When no timely objection is filed, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee notes to 1983 amendment. "[B]ecause a district court must take some action for a report and recommendation to become a final order and because '[t]he authority and the responsibility to make an informed, final determination . . . remains with the judge," however, district courts are still obligated to apply "reasoned consideration" in such situations. *City of Long Branch*, 866 F.3d at 99-100 (citing *Mathews v. Weber*, 423 U.S. 261, 271 (1976); *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)).

## III.     DISCUSSION

As an initial matter, the Court must determine whether the parties' objections were both timely and "specific." Fed. R. Civ. P. 72(b)(2). Both sets of objections were timely, as they were filed within the requisite fourteen-day period. So, too, were the parties' responses to their

respective objections. Patrick's Objections and Response are also specific – each of the submissions specifically identifies the bases of the dispute and references relevant counts and language from the Report and Plaintiffs' Objections. Plaintiffs' Objections and Responses, however, are not. Plaintiffs' Objections do not focus on the counts of the Complaint, but rather offer general complaints that the Report "mischaracterized" the nature of the case, which purportedly "infected" the analysis "on many [unspecified] issues." (D.I. 64 at 4). The only count of the Complaint mentioned in Plaintiffs' Objections is Count I. (D.I. 64 at 3, 4, 9). Plaintiffs' Response to Patrick's Objections is more specific, at least until it attempts to incorporate unspecified arguments from Plaintiffs' responses regarding other defendants. *See supra* note 2. As a matter of judicial efficiency and so all matters related to Patrick and this motion to dismiss may be addressed, however, the Court has considered all issues in Plaintiffs' Responses that are specifically targeted to Patrick, as well as Plaintiffs' objection in footnote 9 of D.I. 65, which mentions Patrick by name and identifies the issue being raised.

### A.    Count I – State-Created Danger

Plaintiffs' Complaint fails to allege facts sufficient to assert a claim against Patrick for Count I.[3] Count I of the Complaint does not address individual defendants,[4] but rather addresses "Defendants" as a group. (D.I. 1 ¶¶ 481-498). The Report, thus, similarly addresses the defendants as a group, finding that Plaintiffs' Complaint fails to satisfy three of the four elements of a state-created danger claim – those requiring: (1) the harm be "foreseeable and fairly direct"; (2) the existence of a "special relationship"; and (3) use of "authority to create an opportunity for danger"

---

[3]    No party objects to the standard for "state-created danger" set forth in the Report. (D.I. 57 at 16). After reasoned consideration and finding no clear error, the Court adopts it in full and incorporates it here.

[4]    In Count I, Plaintiffs specifically refer only to Defendant Goode by name. (D.I. 1 ¶ 489).

– but satisfies the fourth: (4) alleging conduct that "shocks the conscience" under a deliberate indifference standard. (D.I. 57 at 15-21). As noted above, in its conclusions, the Report does not recommend dismissal of Count I, specifically, as to Patrick because it recommends dismissal of all counts against him based on the statute of limitations. (D.I. 57 at 37).

Patrick does not object to the Report's conclusions regarding the elements of Count I, and "concurs[] with [its] findings and recommendation" that the count be dismissed "against all Defendants for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)." (D.I. 71 at 2). Nevertheless, he submitted objections to Count I to argue that Plaintiffs' Complaint fails to allege that he, specifically, was a "fairly direct" cause of the harm they endured and to "request[] an order from the Court clarifying that he is entitled to dismissal on Plaintiffs' state created danger claim on the grounds that Plaintiffs failed to allege facts sufficient to support his personal involvement in the allegations that form the bases of Count I of the Complaint." (D.I. 71 at 2-3). Plaintiffs, on the other hand, protest the Report's analysis of the "special relationship" prong . (D.I. 64 at 4).[5] Thus, the Court considers Patrick to object to the Report's conclusion, or lack thereof, regarding whether Plaintiffs have sufficiently stated a claim against him for Count I based on its findings regarding the "fairly direct" element as well as his lack of personal involvement, and considers Plaintiffs to object to the Report's finding regarding the "special relationship" element.

### 1. Foreseeable and Fairly Direct

The Report finds that Plaintiffs do not satisfy the "foreseeable and fairly direct" requirement of a state-created danger claim because, although the "foreseeability" aspect was

---

[5]     Plaintiffs do not actually identify a specific prong of Count I to which they object, however, they quote language from the Report's discussion of the "special relationship" requirement when explaining their objection to the Report's use of *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992).

sufficiently pleaded, the Complaint "fail[s] to allege sufficient facts to meet the [fairly direct] requirement." (D.I. 57 at 17-18).

Neither party objects to the Report's conclusion that the "foreseeability" requirement is met "because the State-actors had actual knowledge and awareness of risk associated with rolling bypass." (D.I. 57 at 17). Finding no clear error after reasoned consideration, the Court adopts this portion of the Report.

In regard to the "fairly direct" requirement, the Report finds that the facts alleged by Plaintiffs are insufficient as to all defendants because "[t]he rolling bypass policy and/or inadequate staffing were not the direct catalyst for the harm. This fire was the result of arson committed by a third party." (D.I. 57 at 18). Patrick argues that "in addition to these findings with respect to all Defendants, the Complaint's allegations are also deficient to maintain Count I against [him] specifically because there are no well-pleaded allegations that [his] 'enactment' of rolling bypass in 2009, or its implementation through the end of his term in January 2013, were the 'fairly direct' cause of the deaths and injuries that occurred in the Canby Park fire." (D.I. 71 at 2).

"To fulfill the 'fairly direct' requirement of the state-created danger claim, the plaintiff must plausibly allege that state officials' actions 'precipitated or were the catalyst for' the harm for which the plaintiff brings suit." *Henry v. City of Erie*, 728 F.3d 275, 285 (3d Cir. 2013) (quoting *Morse*, 132 F.3d at 910). "'Precipitate,' in turn, means 'to cause to happen or come to a crisis suddenly, unexpectedly, or too soon." *Id.* (quoting *Webster's Third New International Dictionary* 1784 (1993); citing *The Random House Dictionary of the English Language* 1521 (2d ed. 1987) (defining "precipitate" as "to hasten the occurrence of; bring about prematurely, hastily, or suddenly"); *id.* at 325 (defining "catalyst" as "a person or thing that precipitates an event or change")). "Thus, it is insufficient to plead that state officials' actions took place somewhere

along the causal chain that ultimately led to the plaintiff's harm." *City of Erie*, 728 F.3d at 285. In other words, in order for Plaintiffs' pleading to be sufficient, there cannot be "too many links in the causal chain after [Patrick] acted and before tragedy struck." *Id.* at 285-86.

Patrick left his position as Fire Chief in January 2013, more than three and one-half years before the September 24, 2016 fire. (D.I. 57 at 2). During that period, as Plaintiffs' Complaint details, various intervening events occurred. For example:

- A new mayor, Dennis P. Williams ("Williams"), was elected and a new fire chief, Anthony S. Goode ("Goode") was appointed;[6]

- Williams and Goode enacted a similar, but "new policy of 'conditional company closures'";

- Williams and Goode further understaffed the WFD by delaying the filling of vacancies and transferring numerous firefighters from fire suppression to administrative roles;

- The Wilmington City Council passed legislation to mandate the hiring of more firefighters and address other issues of fire safety;

- Williams and Goode refused to comply with the new legislative requirements;

- "[T]he City [began] to experience rolling bypass more often than not."

(D.I. 1 ¶¶ 26, 28, 197-99, 204, 226-58). According to Plaintiffs, these changes "continued to make, and by themselves independently made, the WFD an unmanageably dangerous place, and an even more dangerous place than it previously had been under defendant[]" Patrick.[7] (D.I. 1 ¶ 180). In

---

[6]     Both Williams and Goode are also defendants in this case. (D.I. 1).

[7]     This paragraph of the Complaint actually reads "under defendants Baker and Williams," however, the context indicates that "Williams" was a typo and "Patrick" was intended. The paragraph, which is in a section titled "The Williams Administration Increases the Dangers Even More," reads, in its entirety "Throughout the Williams Administration, the policies and actions of defendants Williams and Goode continued to make, and by themselves independently made, the WFD an unmanageably dangerous place, and even more

addition to all of these intervening events related to the WFD, the fire that ultimately harmed Plaintiffs was the result of arson by a third party. (D.I. 57 at 8).

Although the actions of a third party may in some circumstances be insufficient to sever a causal chain and it is certainly true that an injury can have multiple causes, such injury must still be sufficiently linked to the alleged acts of the defendant for a complaint to be sufficiently pleaded. *See, e.g.*, *City of Erie*, 728 F.3d at 283 ("State actors are not liable every time their actions set into motion a chain of events that result in harm." (citing *Martinez v. State of California*, 444 U.S. 277, 281 (1980))). Three and one-half years expired from the time the Complaint alleges Patrick did anything to create or was in a position to do anything regarding the circumstances that resulted in Plaintiffs' harm, and the fire that caused those harms. During that period, a litany of intervening events occurred that altered how the WFD operates, the availability of personnel and equipment to fight fires, and the persons in charge of decision making for firefighting in Wilmington (*i.e.* a new mayor was elected and a new fire chief appointed). The sheer number of links in the causal chain between the actions Patrick is alleged to have taken and the harms suffered, as well as the lack of immediacy between those actions and the harms suffered, compels the Court to conclude that Plaintiffs have failed to allege that Patrick precipitated or was a catalyst of these harms. *See, e.g.*, *City of Erie*, 728 F.3d at 284-86 (granting defendants' motion to dismiss because their actions "were separated from the ultimate harm by a lengthy period of time [– less than four months – ] and intervening forces and actions"). In short, the Complaint merely alleges that Patrick's "actions took place somewhere along the causal chain that ultimately led to the . . . harm." *Id.* at 285. As the Third Circuit has instructed, this is insufficient.

---

dangerous place than it previously had been under defendants Baker and Williams." (D.I. 1 ¶ 180). Thus, the Court understands the final word in the paragraph should be "Patrick."

2.      Special Relationship

For the "special relationship" element, the Report finds "Plaintiffs fail to allege sufficient facts demonstrating a special relationship to support [s]tate-created danger."  (D.I. 57 at 20). Plaintiffs object to that finding, arguing the Report "mischaracterize[s]" the Complaint by "rel[ying] on the . . . irrelevant principle . . . [from *Collins*] that 'there is no requirement to provide municipal employees with minimal levels of safety and security.'"  (D.I. 64 at 4).  They further argue that "this is not a case challenging difficult resource allocation decisions made by the legislative branch" nor one "seeking to establish minimal levels of workplace safety or involving the *Collins* decision."  (D.I. 64 at 4-9).  Because Plaintiffs have objected to the Report's analysis of this prong, we consider it *de novo*.  In doing so, we find Plaintiffs have failed to sufficiently allege the existence of a "special relationship" under the state-created danger doctrine.

To sufficiently plead a state-created danger claim against Patrick under § 1983, Plaintiffs must allege that a relationship existed between themselves and the city of Wilmington ("City") such that they were "foreseeable victim[s] of [Patrick's] actions in a tort sense," either "individually or as . . . member[s] of a distinct class."  *E.g., L.R. v. Sch. Dist. Of Philadelphia*, 836 F.3d 235, 242 (3d Cir. 2016).[8]  Although the "primary focus" of this inquiry is

---

[8]      The "special relationship" requirement of a state-created danger claim is distinct from the standalone "special relationship" exception to the general rule barring municipal liability for private violence.  *Brown v. Com. Of Pa., Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 479 (3d Cir. 2003) ("The 'relationship' required by the third element of [the state-created danger] test is different than the 'relationship' in the 'special relationship' exception to *Delaney* [*v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) (holding that, generally, "the Due Process Clause imposes no duty on the state to protect its citizens from violence by private actors")]"); *Kneipp v. Tedder*, 95 F.3d 1199, 1209 n.22 (3d Cir. 1996).  The "special relationship" exception applies when a person was a "foreseeable victim . . . in the custodial sense," not in the "tort sense."  *Brown*, 318 F.3d at 479.  Because Count I alleges a state-created danger claim, the Report's evaluation of whether Plaintiffs' Complaint meets the standalone "special relationship" standard, (D.I. 57 at 19-20 (saying the state must "take[] a person in its custody and hold[] him there

"foreseeability," the class members or individual must be distinctively "foreseeable" victims such that the harm they face is different from that faced by "the public in general." *See Morse*, 132 F.3d at 913 n.12 ("Where the state actor has allegedly created a danger towards the public generally, rather than an individual or group of individuals, holding a state actor liable for the injuries of foreseeable plaintiffs would expand the scope of the state-created danger theory beyond its useful and intended limits."); *see also Rivas v. City of Passaic*, 365 F.3d 181, 197 (3d Cir. 2004) ("In *Morse*[,] . . . we explained that the relationship must be sufficiently close to exclude 'those instances where the state actor creates only a threat to the general population,' but not so restrictive as to limit 'the scope of § 1983 to those instances where a specific individual is placed in danger." (quoting *Morse*, 132 F.3d at 913)). To hold otherwise would allow the state-created danger exception to swallow the "general rule that the state is not obligated to protect its citizens from random, violent acts of private parties." *Morse*, 132 F.3d at 913 & n.12; *see also*, *Hopkins v. Yesser*, No. 18-5354, 2019 WL 4645175, at *4 (E.D. Pa. Sep. 24, 2019).

Although the Third Circuit has not articulated precisely how a "distinct class" should be defined or evaluated, their decisions in these and related areas indicate that: (i) the class must have discernible limits or membership criteria, and (ii) the members must face a particularized harm from the alleged action that is separate and distinct from that faced by the public at large. *See, e.g.*, *Morse*, 132 F.3d at 912 n. 12, 914; *Hopkins*, 2019 WL 4645175, at *4-8.

"A class cannot be 'discrete' and 'limited' unless it is 'identifiable.'" *Hopkins*, 2019 WL 4645175, at *4 (quoting *Morse*, 132 F.3d at 914 (noting that in some "situations, requiring the plaintiff to be part of an identifiable and discrete class of persons subject to the harm the state

---

against his will")), was incorrect. That portion of the Report is overruled; the standard applied here is used.

allegedly has created . . . fits within the purposes of the state-create danger claim")); *see also Van Orden v. Borough of Woodstown*, 5 F. Supp. 3d 676, 688 (D.N.J. 2014) ("The purpose of [the special relationship element for a state-created danger claim] is to circumscribe the number of potential plaintiffs stemming from any particular exercise of state authority and shield state actors from liability for any act for which any member of the general public could sue[]" (*citing Morse*, 132 F.3d at 913 n.12; *Phillips*, 515 F.3d at 242)). A class with discernible limits comprising all Plaintiffs is readily identifiable – WFD firefighters injured in fires fought by the WFD in Wilmington along with their children and spouses.[9] Such a definition is sufficiently concrete to allow individuals to be promptly identified as members or not. *See Hopkins*, 2019 WL 4645175, at *4 & n.12 (describing how the classes in various cases were readily identifiable, including those in *L.R.*, 836 F.3d at 347 (kindergarten class), *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165 (3d Cir. 2017) (high school student-athletes), *Phillips*, 515 F.3d at 192 (murderer's targets that he identified to state employees in advance of killings), and *Walter v. Pike Cnty.*, 544 F.3d 182, 192 (3d Cir. 2008) (persons who participated in man's arrest)). It lacks any speculative or subjective terms that could prevent an unacquainted defendant from foreseeing who does and does not fall within its coverage, and it is fairly circumspect. *See, e.g.*, *Id.* at *4-5; *Van Orden*, 5 F. Supp. 3d at 684-89.

In addition to having definitive membership criteria, however, Plaintiffs must also allege that they faced a "particular threat" separate and distinct from that suffered or faced by the public

---

[9]     Plaintiffs' Complaint appears to address this requirement in part by stating "The firefighter plaintiffs were not random members of the public but instead, as Wilmington firefighters, it was foreseeable that they would be exposed to the health and safety risks created by defendants' policies . . . ." (D.I. 1 ¶ 484). This description, however, is not large enough to encompass all Plaintiffs. Many have never been WFD firefighters, but all are or have been the spouses or children of WFD firefighters. (D.I. 1 ¶ 5-25).

at large. *Hopkins*, 2019 WL 4645175, at *7 (*citing* Commonwealth *Bank & Trust Co. v. Russel*, 825 F.2d 12, 13 (3d Cir. 1987); *Morse*, 132 F.3d at 912 n.12 (noting that a state's creation of a "danger towards the public generally" is not actionable, but that actions "affecting only a limited group of potential plaintiffs" may be); *Martinez*, 444 U.S. at 279, 285 (finding a parole board not liable under § 1983 for recommending the release of a "Mentally Disordered Sex Offender" who later killed a teenage girl, reasoning that the "parole board was not aware that [decedent], as distinguished from the public at large, faced any *special* danger.")). On this point, Plaintiffs fail. First, their Complaint repeatedly indicates that the policies enacted by Patrick and the other individual defendants created the same dangers for the general public as they did for the WFD's firefighters. For example, it asserts, among other things, that "all of the aforementioned official policies [including rolling bypass] . . . increas[ed] the danger to firefighters and civilians" (D.I. 1 ¶ 265), made "firefighters and residents . . . less safe," (D.I. 1 ¶ 133), "threat[ed] the citizens . . . and firefighters of [Wilmington]" (D.I. 1 ¶ 142), "put [firefighters'] safety, as well as that of the residents they protect[] at risk" (D.I. 1 ¶ 211), "endanger[ed] the lives of residents and firefighters" (D.I. 1 ¶ 215), constituted "gambling with the lives of firefighters and all that live, work, and recreate in . . . Wilmington" (D.I. 1 ¶ 216), and would "get somebody killed, whether it's a citizen of this city or a firefighter" (D.I. 1 ¶ 142).[10]

Second, the examples provided in the Complaint of injuries suffered by civilians as a result of rolling bypass (or similar policies) are the same sorts of injuries that underlie this suit. For

---

[10]    It also states, in relation to rolling bypass and related policies, "the health and safety of our citizens and visitors are too important to put at risk," (D.I. 1 ¶ 216), and notes that a report in Philadelphia on similar practices found "[d]elays in response time [caused by rolling bypass policies] can lead to more dangerous fires than would be encountered without the [policies], ultimately increasing the risks for more injuries and possible deaths to firefighters and civilians," (D.I. 1 ¶ 303).

example, the Complaint alleges that the deaths of three children and injuries of three firefighters in Philadelphia were attributed to that city's version of rolling bypass and the delays in fire suppression that policy caused. (D.I. 1 ¶ 303). It also describes how "two young . . . residents" of Wilmington perished in January 2016 after a "fire grew in size and intensity" when the "fire engine . . . closest to the fire was closed due to conditional company closures."[11] (D.I. 1 ¶ 305). Just like the injuries suffered by the firefighters in Philadelphia, the injuries claimed by the firefighter plaintiffs here are the same as those endured by the two Wilmington children in January and the civilians of Philadelphia – physical, psychological, and economic harms that resulted from a fire that grew in size and intensity because of delays in the arrival of appropriate firefighting staff and equipment. (D.I. 1 ¶ 460-63). Similarly, the injuries that the other plaintiffs here endured and continue to endure are the same as might be visited upon the spouses and children of any member of the general public who perished in a fire that grew out of control from lack of emergency intervention. *Id.* Although the harms suffered by Plaintiffs were and continue to be devastating and horrible, they are not – as currently alleged – distinct from those faced or endured by any member of the public as a result of rolling bypass.

The only plausible difference between the danger faced by the public at large and Plaintiffs is that Plaintiffs had a higher chance of being harmed because they were exposed to the dangers caused by the alleged violative policies more frequently than the rest of the public. In other words, Plaintiffs might argue that their increased proximity to dangerous fires and the harms they cause, as a result of their profession or the profession of their spouse or parent, make them a discrete class. Yet courts have frequently rejected such "frequency" or "proximity" logic in related

---

[11]     Conditional company closures was a policy enacted under Williams and Goode that was allegedly similar to rolling bypass. (D.I. 1 ¶ 95, 202, 204).

circumstances. *See, e.g.*, *Commonwealth Bank & Trust Co. v. Russel*, 825 F.2d 12, 13 (3d Cir. 1987) (holding that "residents of the communities surrounding [a] jail are part of the 'public at large'" and face no "special danger" from an escaped prisoner based on their proximity to said jail); *Long v. Cnty. Of Armstrong*, 679 Fed. App'x 221, 222, 224 & n.5 (3d Cir. 2017) (same); *Twp. Of West Orange v. Whitman*, 8 F. Supp. 2d 408, 422 (D.N.J. 1998) (same, in the context of proximity to a home for those with mental illness); *Hopkins*, 2019 WL 4645175, at *7-8 ( "fac[ing] a higher chance of encountering . . . the potential harm than other members of the public [is] insufficient" to differentiate a purported class from the general public because both groups "face[] the *same kind* of danger").

Moreover, the Supreme Court has cautioned against basing a § 1983 specialized relationship finding on a plaintiff's status as a municipal employee. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125-26 (1992); *see also, e.g.*, *Rodriquez v. City of Philadelphia*, 350 Fed. App'x 710, 712 (3d Cir. 2009) (observing that, with limited exception, "the Supreme Court has long held that "[n]either the text nor the history of the Due Process Clause supports . . . [a] claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause[]" (citations omitted)); *Estate of Phillips v. D.C.*, 455 F.3d 397, 407 (D.C. Cir. 2006) ("Edwards's deliberate indifference may have increased the Firefighters' exposure to risk, but the risk itself – injury or death suffered in a fire – is inherent in their profession. As [previous D.C. Circuit decisions] make clear, the District is not constitutionally obliged by the Due Process Clause to protect public employees from inherent job-related risks."). This further cuts against any argument that Plaintiffs' harm is different from that faced by the general public solely because they had a higher chance of experiencing those harms, since that increased likelihood is a result of the firefighter plaintiffs'

employment with the City. The type of harm faced by the class must be different in kind from that faced by the general public, not simply different in likelihood. *See Hopkins*, 2019 WL 4645175, at *8. Thus, the only characteristic that plausibly differentiates Plaintiffs from the general public for purposes of this element – their closer proximity to the dangers allegedly caused by the policies of Patrick and the other Defendants based on their employment – is insufficient.

In sum, because Plaintiffs have not alleged that they were distinctively foreseeable victims such that the harm they endured and continue to endure is different from that faced by the public in general, they have failed to allege sufficient facts demonstrating the necessary relationship to support their state-created danger claim.

### 3.    Use of Authority to Create an Opportunity for Danger

In regard to the "use of authority to create an opportunity for danger" requirement, the Report finds that "Plaintiffs' allegations of harm fail to meet this element under the doctrine of State-created danger" because "rolling bypass was not the direct cause nor the but for cause of the harm to Plaintiffs." (D.I. 57 at 20-21). Neither side objects to the Report on this point either, and the Court finds no clear error in the analysis after reasoned consideration. Thus, the Court adopts this portion of the Report applies to Patrick as well.

### 4.    Personal Involvement

Although not one of the four "elements" of a state-created danger claim under the Due Process Clause of the Fourteenth Amendment, a defendant in a civil rights action "must have personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423 F. 3d 347, 352 (3d Cir. 2005). This may be shown "through allegations of personal direction or actual knowledge and

acquiescence." *Id.*; *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).[12]   The

Third Circuit has held that "a civil rights complaint is adequate where it states the conduct, time,

place, and persons responsible." *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir.

1980).   In the instant matter, Plaintiffs allege that time and location to be September 24, 2016, at

2:56 a.m. at 1927 Lakeview Road, Wilmington, D.E. and allege that Patrick, amongst others, was

responsible for the institution and continued use of rolling bypass, despite evidence to the contrary

of its effectiveness, which caused the injuries they sustained.  (D.I. 57 at 26-27).

Based on this, the Report recommends that "Plaintiffs['] factual allegations are insufficient

to support personal involvement in relation to . . . Chief Patrick" because "[a]t the time of this

incident . . . Chief Patrick had not served in [his] official capacity[y] for almost three years" and

[t]here is no factual support alleged by Plaintiffs that . . . Patrick had any personal involvement in

the policies, decisions[,] or practices of the subsequent administration nor the events that occurred

in 2016."  (D.I. 57 at 27).   Similar to his objections regarding the "fairly direct" element of Count

I, Patrick argues that this finding is accurate and Count I should be dismissed against him based

on it.  (D.I. 71 at 2-3).   Plaintiffs, on the other hand, object that they have met the requisite standard

by "factually alleg[ing] that [Patrick] created, implemented, and knowingly lied to the legislature

and the public in order to hide the known dangers of their rolling bypass policy."  (D.I. 64 at 9

n.6).   They further argue that the claim should persist against Patrick because "[i]t is neither

unrealistic nor fanciful, when one does not take an unduly crabbed reading of the Complaint, to

expect discovery to also demonstrate personal involvement in continuing or modifying their policy

of rolling bypass."  (D.I. 64 at 9 n.6).   They also state it is their "understanding that . . . Patrick [is]

---

[12]    The Court adopts the Report's articulation of the "personal involvement" standard and
repeats it here only for convenience.  Neither party objects to this facet of the Report and
the Court finds no clear error after reasoned consideration.

presently on the City defendant's payroll, either as [a] current employee[] or consultant[]." (D.I. 64 at 9 n.6).

Although Plaintiffs now speculate as to Patrick's involvement, the Complaint does not allege that Patrick had any personal involvement in the events of September 24, 2016. Nor, as already detailed, does the Complaint sufficiently allege that Patrick's was involved in the circumstances, including policies, decisions, or practices, that precipitated those events. Whether it is "unrealistic" or "fanciful" to expect discovery to demonstrate Patrick's personal involvement in continuing or modifying the rolling bypass policy during the Williams administration is immaterial, because the Complaint does not allege that such involvement occurred. Additionally, Plaintiffs' new allegation that Patrick is on the City's current payroll does not appear in the Complaint and, even if it did, the Court does not see, and the Complaint fails to articulate, how Patrick's involvement in city government in 2019 indicates he was personally involved in events that occurred in 2016. *See, e.g.*, *Lopez v. Corr. Med. Servs., Inc.*, No. 11-1591, 2012 WL 4373462, at *2 (3d Cir. Sep. 26, 2012) (dismissing claims in § 1983 deprivation of constitutional rights action based on lack of personal involvement because defendants had only come in contact with plaintiff after alleged injury occurred). As a result, Plaintiffs have failed to sufficiently allege that Patrick was personally involved in the events leading to the harm they allege they sustained under Count I.

Because Plaintiffs have failed to allege sufficient facts to satisfy the motion to dismiss standard for three of the four elements of a state-created danger and have also failed to sufficiently allege that Patrick was personally involved in the events leading to the harm they allege they

sustained under Count II, Plaintiffs have failed to state a claim for relief against Patrick for Count I.[13]

## B. <u>Count II – Shocks the Conscience</u>

The Report also finds that Plaintiffs have failed to state a claim against Patrick under Count II.[14] Patrick argues that since "Plaintiffs fail to allege 'any personal involvement [by Chief Patrick] in the policies, decisions, or practices of the subsequent administration nor the events that occurred in 2016,' . . . Count II of the Complaint cannot survive" against him. (D.I. 71 at 3 (quoting D.I. 57 at 27)). As noted *supra*, in addition to satisfying any elements of a claim, Plaintiffs must sufficiently allege that Patrick was "personal[ly] involve[d] in the alleged wrongdoing." *Evancho*, 423 F. 3d at 352. This requirement applies to all civil rights claims. *Id.*; *see also* (D.I. 57 at 26-28 (making no distinction between the various counts at issue in its "personal involvement" inquiry)). As explained *supra*, despite their objections, Plaintiffs' Complaint does not sufficiently allege that Patrick was personally involved in the events leading to the harm Plaintiffs allege they sustained under Count I. As these same events are the bases for the second count, the Court reaches the same conclusion – Plaintiffs have failed to sufficiently allege that Patrick was personally involved in the events leading to the harm they allege they sustained under Count II.

Thus, Plaintiffs have failed to state a claim for relief against Patrick for Count II.

---

[13] The Court finds no need to address the Report's findings regarding the fourth element of the state-created danger doctrine (whether Patrick's conduct shocks the conscience). Every element of the claim must be adequately pleaded. *See, e.g.*, *City of Erie*, 728 F.3d at 282 (stating the court "needn't look further than the first element of the state-created danger claim" where that element was insufficiently pleaded).

[14] The Report does not actually consider whether Patrick's conduct "shocks the conscience. (D.I. 57 at 18-19, 21-23). It does, however, discuss the requirement that Patrick had to have been personally involved in the conscience-shocking activity to be held liable. (D.I. 57 at 26-27). Because the Court finds the "personal involvement" facet dispositive, it does not consider whether Patrick's alleged conduct meets the standard required for a standalone Fourteenth Amendment shocks the conscience theory.

### C.    <u>Count III – Maintenance of Policies, Practices, and Customs</u>

Count III is inapplicable to Patrick because it is a *Monell* claim and he is not sued in his official capacity.  The Report implicitly reaches this conclusion, neither party objects, and the Court finds no clear error after reasoned consideration.  "Under a §1983 claim, local governing bodies and officials, acting in their official capacity, may be sued directly . . . where, as alleged here, the purported unconstitutional action implements or executes a policy, ordinance, regulation, or decision officially adopted or promulgated by them."  (D.I. 57 at 23-24 (citing *Monell v. Dep't of Soc. Servs. Of the City of New York*, 436, U.S. 658, 690 (1978)).  Patrick "is sued only in his individual capacity," (D.I. 1 ¶ 27), and "is no longer in office, nor hold[s] any official position[]." (D.I. 57 at 24 n.156).  Thus, the Court adopts the Report's analysis and conclusions for Count III as to Patrick; the count is inapplicable to him.[15]

### D.    <u>Qualified Immunity</u>

Qualified or good faith immunity operates as an affirmative defense for the benefit of government officials.  *Harlow v. Fitzgerald*, 457 U.S. 800, 808 (1982).  It is immunity from suit rather than merely a defense to liability, *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and "shield[s] officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Such performance is unreasonable, and the immunity disappears, when the facts alleged by a plaintiff show a violation of a constitutional right and the right at issue was clearly established at the time of the alleged misconduct.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Unless a plaintiff's allegations sufficiently

---

[15]    Because Count III, as a *Monell* claim, is inapplicable to Patrick, the Court finds no need to address his argument that he is "entitled to dismissal from Count III due to Plaintiffs' failure to allege his personal involvement,"  (D.I. 71 at 4), or Plaintiffs' rebuttal that "Count III properly pled the required causation needed to survive the motion to dismiss," (D.I. 81 at 1 (modifications omitted)).

assert a violation, a defendant pleading qualified immunity is entitled to dismissal before discovery. *Pearson*, 555 U.S. at 236; *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996).[16]

Though it mentions Patrick's assertion of qualified immunity, the Report does not discuss or conclude whether he is entitled to its protection. Patrick argues that he is because Plaintiffs have failed to allege facts sufficient to meet either prong of the inquiry, (D.I. 71 at 4-5), whereas Plaintiffs argue that the presence of "key" factual disputes in the case mandates that the "defense motion was premature."[17] (D.I. 82 at 1). As explained above, however, Plaintiffs have not adequately alleged a violation of a constitutional right against Patrick under Rule 12(b)(6). Thus, although factual disputes may exist regarding "minute factual issue[s]," (D.I. 82 at 1), contrary to Plaintiffs' assertions, (D.I. 82 at 1), key fact disputes do not remain to be resolved at this time. As such, the Court need not determine whether Plaintiffs can satisfy the other qualified immunity prong; under the facts currently alleged, Patrick remains entitled to qualified immunity. *See Pearson*, 555 U.S. at 237.

### E.     Statute of Limitations

Next, Plaintiffs object to the Report's recommendation that all counts against Patrick be dismissed based on expiration of the statute of limitations. (D.I. 65 at 9 n.9). Patrick disagrees. (D.I. 71 at 1; D.I. 77 at 2-3). Plaintiffs' position is that the statute of limitations clock did not begin to run (*i.e.* did not "accrue") until the fire, and their Complaint was timely because it was filed within two years of that fire. (D.I. 65 at 9 n.9). Patrick, on the other hand, argues that the

---

[16]     Neither party objects to the Report's statement of the qualified immunity standard (D.I. 57 at 28-29) and the Court finds no clear error after reasoned consideration. The Court adopts that standard in full, though limited portions are stated and clarified here for convenience.

[17]     Plaintiffs essentially argue that the Report's conclusion as to Williams and Goode – that neither was entitled to qualified immunity at this time because "factual issues remain" (D.I. 57 at 29) – should also apply to Patrick

limitations clock began to run either when the last "act ascribed to [him] in the Complaint – 'enacting' a 'new rolling bypass policy on July 1, 2009' – occurred" or, at the latest, when he left office in 2013. (D.I. 77 at 2-3, 3 n.5). The Court disagrees with Patrick – Plaintiffs' cause of action accrued when the damages allegedly occurred, and Plaintiffs did not suffer any of the damages complained of until the fire. Because Plaintiffs filed their Complaint within two years of that date, it was timely.

Section 1983 suits are subject to the state statute of limitations period for personal injury claims. *Owens v. Okure*, 488 U.S. 235, 245-50 (1989). In Delaware, that period is two years. 10 Del. C. § 8119. Federal law, however, dictates when a § 1983 claim accrues, that is, what constitutes accrual. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)); *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998). The Third Circuit instructs that "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Montgomery v. DeSimone*, 159 F.3d at 126 (internal citations omitted). In other words, the statute of limitations clock begins:

> when a plaintiff has a 'complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.' *Wallace*, 549 U.S. at 388 (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). As the [Supreme Court] in *Wallace* explained, 'the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.' *Id.* at 391.

*Dique*, 603 F.3d at 185-86; *see also Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 860-61 (3d Cir. 2014) (quoting *Dique*). Thus, for the statute of limitations to bar Plaintiffs' § 1983 personal injury claims, it must be apparent from the face of the complaint that Patrick's alleged unlawful conduct *and* the harm suffered by Plaintiffs occurred more than two years before this suit was filed. *See Buchholz v. Midwestern Intermediate Unit IV*, 128 Fed. App'x. 890, 893-95

(3d Cir. 2005) (holding district court did not abuse its discretion or commit reversible error by so instructing jury); *see also Fleckenstein v. Crawford*, No. 1:14-cv-1085, 2015 WL 5829758, *3-*4 (M.D. Pa. Oct. 1, 2015).[18]

Here, the statute of limitations clock did not begin to run until at least September 24, 2016. Patrick disputes this, arguing that it accrued once "the firefighters had notice of the [constitutional] injury that forms the basis of the Plaintiffs' claims." (D.I. 77 at 3). To him, this injury was "expos[ure] to the health and safety risks created by defendants' policies" and his alleged "conscious[] disregard[]" of those risks. (D.I. 77 at 3). As explained, however, the timing of the "constitutional injury" of is not the pertinent question. Rather, we must ask when Plaintiffs' had a "complete and present cause of action." *Wallace*, 549 U.S. at 388; *Dique*, 603 F.3d at 185-86. That cannot occur until the damages complained of are incurred. *Wallace*, 549 U.S. at 391; *Dique*, 603 F.3d at 185-86. Here, Plaintiffs seek damages solely for injuries related to the fire (*e.g.*, death, burns, PTSD, burial costs, loss of wages, etc.). (D.I. 1 at 67). In *Fleckenstein*, a man killed a woman shortly after being accidentally released from prison. 2015 WL 5829758, at *1-2. Within two years of the murder, but more than two years after the man's release, her estate and family

---

[18] In *Buchholz*, the Third Circuit held the district Court did not abuse its discretion or commit reversible error in instructing the jury regarding the defendant's statute-of-limitations defense for plaintiff's state-created danger claim, to which a two-year statute of limitations applied. Those instructions consisted, in relevant part, of the following:

> This case was brought-it was filed in this Court on September 26, 2001. Thus if you find that none of defendants' conduct occurred after September 26, 1999, *and* if you find that plaintiff was not injured after September 26, 1999, then you must find that plaintiff's claims are barred by the statute of limitations.

128 Fed. App'x. at 893 (emphasis added). The Third Circuit further commented that the district court's instructions operated to deem [the p]laintiff's claim timely so long as any element of her state created danger claim fell within the requisite limitations period." *Id.* at 894.

filed a § 1983 suit that was subject to a two-year statute of limitations. *Id.* at *1-4. The court found the claims were not time-barred because the plaintiffs "had no reason to know of the injury – the death of [the woman] – before [she] was killed." *Id.* at *4. Similarly, Plaintiffs had no reason to know of the harm they suffered until the fire occurred. Since Plaintiffs filed suit within two years of that date, their suit is not time-barred.

### F. Political Question Doctrine

Both sides also object to aspects of the Report's finding that Patrick is not entitled to dismissal under the political question doctrine. The Report recommends that the doctrine is applicable in this case generally, but offers no shelter to Patrick because, "although [he] may have been [a] policy maker[] for the [WFD, he was] neither [an] elected government official nor responsible for other various policies of the City." (D.I. 57 at 37). Patrick disputes only the latter, arguing "the applicable authority does not require that a defendant be an elected official in order for the political question doctrine to apply." (D.I. 71 at 6-7). Plaintiffs, on the other hand, protest the former – the Report's finding that the political question doctrine factors into this case at all. They posit that "the [political question] doctrine applies only when the U.S. Constitution dictates that resolution of the question is in the hands of a co-equal branch of the federal government; it does not similarly defer to local (or state) government." (D.I. 62 at 2). They also argue that the Report improperly invokes the Supreme Court's decision in *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992) in assessing the applicability of the political question doctrine. (D.I. 64 at 4, 6-9). Upon *de novo* review, the Court agrees with Plaintiffs that the political question doctrine does not bar its consideration of their claims against Patrick.

The political question doctrine is one of the many doctrines, like those associated with standing, mootness, and ripeness, that "place[] constitutional and prudential limits on the power of

the federal courts to adjudicate certain kinds of claims." *Baker v. Carr*, 369 U.S. 186, 198-99 (1962). Although somewhat amorphous, at its broadest the doctrine may be described as one that "prevent[s] conflicts as to certain politically delicate questions between co-ordinate branches of the federal government." *Parker v. Mandel*, 344 F. Supp. 1068, 1073 (D. Md. June 14, 1972) (citing *Baker*, 369 U.S. at 210); *see also Baker*, 369 U.S. at 217 (listing the various types of situations in which a case may be considered to involve a political question). More specifically, and most relevant here, the political question doctrine functions as a guardrail against judicial interference in those areas that are reserved for the executive or legislative branches of the federal government. *Rodriguez v. 32d Legislature of the Virgin Islands*, 859 F.3d 199, 206-07 (3d Cir. 2017) (citing *Powell v. McCormack*, 395 U.S. 486, 518 (1969)).

Notwithstanding these grandiose characterizations and ample litigation, however, "the Supreme Court has only rarely found that a political question bars its adjudication of an issue." *McMahon v. General Dynamics Corp.*, 933 F. Supp. 682, 694 (D.N.J. March 20, 2013) (quoting *Connecticut v. American Elec. Power Co.*, 582 F.3d 309, 321 (2d Cir. 2009), *rev'd on other grounds*, 564 U.S. 410 (2011)); *see also, e.g.*, *In Re Nazi Era Cases Against German Defendants Litig.*, 129 F. Supp. 2d 370, 374 (D.N.J. March 1, 2001) ("The application of the political question doctrine is not absolute[]" (citing *Baker*, 369 U.S. at 211)). As such, "[t]he doctrine must be cautiously invoked." *In re Nazi Era Cases Against German Defendants Litig.*, 129 F. Supp. 2d at 374.

As to the applicability of the political question doctrine, the Supreme Court has noted that "it is the relationship between the judiciary and the coordinate branches of the Federal Government, and not the federal judiciary's relationship to the States, which gives rise to the 'political question'" because "[t]he nonjusticiabilty of a political question is primarily a function

of the separation of powers." *Baker*, 369 U.S. at 210-11; *accord Elrod v. Burns*, 427 U.S. 347, 351 (1976); *Rodriguez v. 32d Legislature of the Virgin Islands*, 859 F.3d 199, 206 (3d Cir. 2017); *Larsen v. Senate of the Comm. Of Penn.*, 152 F.3d 240, 246 (3d Cir. 1998) (quoting *Baker*, 369 U.S. at 210). Thus, where a case involves a challenge to the action(s) of a local executive branch and judicial action will not infringe upon the power of one of our co-equal, sister branches of the federal government, the political question doctrine has no role. *E.g.*, *Curley v. Monmouth Cnty. Board of Chosen Freeholders*, No. 3:17-cv-12300, 2018 WL 3574880 (D.N.J. July 25, 2018).

Plaintiffs have brought suit against local government officials in a manner that does not implicate any of the co-ordinate branches of the federal government. Moreover, each of Plaintiffs' claims is a substantive due process claim under the Fourteenth Amendment (D.I. 1 ¶¶ 481-515), an area that the Third Circuit has instructed is "squarely within the domain of the federal judiciary." *Larsen*, 152 F.3d at 246-47 (noting also that claims based "primarily on the Due Process Clause of the Fourteenth Amendment . . . are the subject of judicially developed legal principles that guide [the Court's] decisions"); *see also id.* at 247 ("Unlike . . . political question cases, where the 'courts acknowledge the possibility that a constitutional provision may not be judicially enforceable,' *United States Dep't of Commerce v. Montana*, 503 U.S. 442, 458 (1992), issues involving the . . . Fourteenth Amendment[] are regularly enforced by judicial decision."). Thus, adjudication of Plaintiffs' claims is not barred by the political question doctrine.

## G. Standing of Family Member Plaintiffs

Lastly, the Court considers Patrick's assertion that "the Plaintiffs who are family members of W[F]D firefighters do not assert any facts to show that their own substantive due process rights were harmed as is required to bring claims under Section 1983." (D.I. 42 at 19). In other words,

Patrick argues that the family member plaintiffs (*i.e.* those plaintiffs who are not WFD firefighters nor the estates of WFD firefighters) "lack standing to bring an action under § 1983." (D.I. 57 at 31). The Report agrees with him, recommending that plaintiffs Brad Speakman, Terrence Tate, John Crawthray, and the estates of Jerry W. Fickes, Ardythe D. Hope, and Christopher M. Leach (the firefighter plaintiffs) have proper standing to bring an action under § 1983, but the family member plaintiffs do not. (D.I. 57 at 32). Neither party discusses this issue in their Objections or Responses. Plaintiffs address it in objections directed to another defendant but make no argument regarding Patrick (they focus exclusively on Defendant Goode). (D.I. 63). Thus, the Court considers neither party to have objected to the Report's finding regarding the standing of the family member plaintiffs with respect to Patrick. Therefore, after reasoned consideration and finding no clear error, the Court adopts the Report's findings as to the standing of the family member plaintiffs with respect to Patrick in full – those plaintiffs lack standing.

## IV.  CONCLUSION

For the foregoing reasons, the objections of Plaintiffs and Patrick are each SUSTAINED in-PART part and OVERRULED-in-PART, the Report is ADOPTED as MODIFIED herein as to Patrick. Patrick's motion to dismiss is GRANTED, and the Complaint as to Patrick is dismissed without prejudice. An appropriate order will follow.