IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FIREFIGHTER BRAD SPEAKMAN, RET.; SENIOR FIREFIGHTER TERRANCE TATE, RET.; LIEUTENANT JOHN CAWTHRAY; KELLI ANN STARR-LEACH as Administratrix of the Estate of LIEUTENANT CHRISTOPHER M. LEACH and as guardian ad litem of A.L. and M.L.; BRENDAN LEACH; LAURA FICKES, individually and as Executrix of the Estate of SENIOR FIREFIGHTER JERRY W. FICKES, JR.; BENJAMIN FICKES; JOSHUA FICKES; SIMONE CUMMINGS as Administratrix of the Estate of SENIOR FIREFIGHTER ARDYTHE D. HOPE; ARYELLE HOPE; ALEXIS LEE; and ARDAVIA LEE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | C.A. No. 18-1252 (MN) |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| DENNIS P. WILLIAMS, individually; JAMES M. BAKER, individually; ANTHONY S. GOODE, individually; WILLIAM PATRICK, JR., individually; and THE CITY OF WILMINGTON, a municipal corporation, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Thomas C. Crumplar, Raeann C. Warner, JACOBS & CRUMPLAR, P.A.; Stephen J. Neuberger, Thomas S. Neuberger, THE NEUBERGER FIRM, P.A. – attorneys for Plaintiffs

Michael P. Kelly, Steven P. Wood, Dawn Kurtz Crompton, Hayley J. Reese, & Adam N. Saravay, MCCARTER & ENGLISH, LLP – attorneys for Defendant City of Wilmington

James D. Taylor, Jr. & Jessica M. Jones, SAUL EWING ARNSTEIN & LEHR – attorneys for Defendant Dennis P. Williams

Kathleen Furey McDonough, Jesse L. Noa, & Tracey E. Timlin, POTTER ANDERSON & CORROON LLP – attorneys for Defendant Anthony S. Goode.

February 21, 2020
Wilmington, Delaware

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court are the objections of Plaintiffs (D.I. 62-66) ("Plaintiffs' Objections") and of Defendants Dennis P. Williams ("Williams") (D.I. 67 ("Williams' Objections")), the City of Wilmington, Delaware ("City") (D.I. 68 ("City's Objections")), and Anthony S. Goode ("Goode") (D.I. 70 ("Goode's Objections")) (collectively, "Present Defendants" and "Present Defendants' Objections," respectively), to Chief Magistrate Judge Thynge's Report and Recommendation (D.I. 57, "the Report") relating to Present Defendants' Motions to Dismiss (D.I. 37, 39, 43 ("Williams' Motion," "Goode's Motion," and "City's Motion," respectively; collectively, "Present Defendants' Motions")). The Report recommends dismissal of at least some of Plaintiffs' counts against each of Present Defendants.[1] (D.I. 57 at 37). The Court has reviewed the Report, Plaintiffs' Objections and Present Defendants' responses thereto (D.I. 75, 76, 78 ("Williams' Response," "Goode's Response," and "City's Response," respectively; collectively, "Present Defendants' Responses")), and Present Defendants' Objections and Plaintiffs' responses thereto (D.I. 79-82 ("Plaintiffs' Responses")),[2] and has considered *de*

---

[1]   Although the Report only appears to recommend dismissal of Count I against Williams, (*see* D.I. 57 at 14-28), it also concludes that he is protected by the political question doctrine – a finding that would dictate dismissal of all three counts of the Complaint against him, (*see id.* at 32-37). In light of the Court's holding that the Complaint fails to allege the required constitutional injury for all counts, *see infra*, however, and because Williams asks the Court to dismiss all counts, (*see* D.I. 67 at 1 n.1, 4-10), the Report's seeming lack of clarity on this issue does not impact the Court's analysis or conclusions. The Court does note, however, that the political question doctrine is inapplicable to local officials like Williams. *E.g.*, *Curley v. Monmouth Cty. Board of Chosen Freeholders*, No. 3:17-cv-12300-BRM-TJB, 2018 WL 3574880 (D.N.J. July 25, 2018); *see also Baker v. Carr*, 369 U.S. 186, 210-11 (1962); *Rodriguez v. 32d Legislature of the V.I.*, 859 F.3d 199, 206 (3d Cir. 2017); (*see also* D.I. 87 at 24-26).

[2]   Chief Magistrate Judge Thynge imposed a ten-page limit on "[a]ny objections" filed by Plaintiffs or Defendants, as well as "[a]ny response by Plaintiffs to a Defendant's objections" and "[a]ny response by a Defendant to Plaintiffs' objections. (D.I. 60 at 5-6). As already noted in related decisions on this matter (*see* D.I. 84 at 1 n.2; D.I. 87 at 1 n.2), the parties did not request or receive permission from the Court to exceed that limit.

*novo* the objected-to portions of the Report. Fed. R. Civ. P. 72(b)(3).[3] The Court has also afforded

reasoned consideration to any unobjected-to portions of the Report. *EEOC v. City of Long Branch*,

866 F.3d 93, 99-100 (3d Cir. 2017). For the reasons set forth in this opinion, the Objections of

Plaintiffs are OVERRULED-in-PART, the Objections of Present Defendants are SUSTAINED-

in-PART, the Report is ADOPTED-as-MODIFIED below as to Present Defendants, and Present

Defendants' Motions to Dismiss are GRANTED. The Complaint as to Present Defendants is

dismissed without prejudice.

## I.  BACKGROUND

The Report sets forth a detailed description of the factual and procedural background of

this matter. (D.I. 57 at 2-12). The parties have not objected to any of those sections of the Report

and the Court's reasoned consideration finds no clear error. The Court therefore adopts those

sections and incorporates them here.

As noted in the Report, this matter concerns the death of three Wilmington Fire Department

("WFD") firefighters and the substantial injury of three other firefighters as a result of a house fire

that occurred on September 24, 2016 in Wilmington, DE. Plaintiffs allege that the injuries

sustained were proximately caused by the policies and actions of, *inter alia*, Present Defendants,

---

Nevertheless, they incorporate arguments in filings written by or directed to other parties. (*See, e.g.*, D.I. 79 at 10 n.6). In an effort to resolve these issues expeditiously, the Court has read all relevant responses and objections. The Court will, however, not countenance future failures to abide by Court orders.

[3]     In doing so, the Court has considered the arguments raised in Present Defendants' opening briefs supporting their Motions, (D.I. 38, 40, 44 ("Williams' Opening Brief," "Goode's Opening Brief," and "City's Opening Brief," respectfully; collectively, "Present Defendants' Opening Briefs")), Plaintiffs' corresponding answering brief, (D.I. 46 ("Answering Brief")), and Present Defendants' replies, (D.I. 49-51 ("Goode's Reply," "Williams' Reply," and "City's Reply," respectfully; collectively, "Present Defendants' Replies")), as well as papers submitted with each.

regarding "rolling bypass," which Plaintiffs contend violated their substantive rights guaranteed by the Fourteenth Amendment of the United States Constitution.

Plaintiffs' Complaint (D.I. 1) asserts three counts under 42 U.S.C. § 1983: a "state-created danger" count (Count I), a "shocks the conscience" standalone count (Count II), and a "maintenance of policies, practices, and customs" count (Count III). Via their Motions, Present Defendants separately sought dismissal of each of the counts, asserting a variety of different – though frequently overlapping – grounds.

For Defendants Williams and Goode, the Report finds that Plaintiffs failed to sufficiently allege facts necessary to meet the elements of Count I but succeeded for Counts II and III. (D.I. 57 at 14-28). For the City, the Report finds that Plaintiffs have successfully pleaded Count III, but not Counts I or II. (*Id.*). The Report also recommends that neither Williams nor Goode is entitled to qualified immunity at this stage, (*id.* at 28-30), but Williams (not Goode) is protected by the political question doctrine, (*id.* at 32-37). Finally, the Report recommends that Plaintiffs Brad Speakman, Terrance Tate, John Cawthray, and the estates of Jerry W. Fickes, Ardythe D. Hope, and Christopher M. Leach ("Firefighter Plaintiffs") have standing to bring an action under § 1983, but all other Plaintiffs ("Family Member Plaintiffs") do not. (*Id.* at 31-32).

On September 11, 2019, both sides filed their Objections. (D.I. 62-68, 70). On September 25, 2019, they filed their Responses. (D.I. 75, 76, 78-82).

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010);

*see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "To survive a motion to dismiss, [however,] a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

## B.     Review of Reports and Recommendations on Dispositive Motions

The power invested in a federal magistrate judge varies depending on whether the issue is dispositive or non-dispositive. "Unlike a nondispositive motion (such as a discovery motion), a motion is dispositive if a decision on the motion would effectively determine a claim or defense of a party." *City of Long Branch*, 866 F.3d at 98-99 (citations omitted). Under this standard, a motion to dismiss under Rule 12(b)(6) is clearly dispositive.

For reports and recommendations issued for dispositive motions, Rule 72(b)(3) of the Federal Rules of Civil Procedure instructs that "a party may serve and file specific written objections to the proposed findings and recommendations" "[w]ithin 14 days" and "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *See also* 28 U.S.C. § 636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). When no timely objection is filed, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee notes to 1983 amendment. "[B]ecause a district court must take some action for a report and recommendation to become a final order and because '[t]he authority and the responsibility to make an informed, final determination . . . remains with the judge," however, district courts are still obligated to apply "reasoned consideration" in such situations. *City of Long Branch*, 866 F.3d at 99-100 (citing *Mathews v. Weber*, 423 U.S. 261, 271 (1976); *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)).

## III.     DISCUSSION

As an initial matter, the Court must determine whether the parties' Objections were both timely and "specific." Fed. R. Civ. P. 72(b)(2). All of the Objections and Responses were timely, as they were filed within the requisite fourteen-day period. Some of the Objections and Responses were also fairly specific. Others, however, were not. The Court will not belabor the point it has made in its two previous related decisions in this matter, (*see* D.I. 84 at 4-5; D.I. 87 at 4-5), but the same issues noted in those orders in regard to the specificity of objections and responses persist in the relevant filings here. As in those decisions, however, the Court – as a matter of judicial efficiency – has considered all issues in the parties' Objections and Responses that are specifically

targeted to present opposing parties, as well as all other arguments explicitly brought to the Court's attention.[4]

The following issues raised by the parties are addressed below: (A) whether Plaintiffs properly allege deprivation of a constitutional right; and (B) whether Family Member Plaintiffs have standing.

## A.    Whether Plaintiffs Properly Alleged Deprivation of a Constitutional Right

"To state a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)); *accord L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016); *see also Kedra v. Schroeter*, 876 F.3d 424, 436 n.6 (3d Cir. 2017) (acknowledging this requirement).[5] "Accordingly, 'the first step in evaluating [any] section 1983 claim is to "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all."'" *Kaucher*, 455 F.3d at 423 (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998))); *accord L.R.*, 836 F.3d at 241.

---

[4]    For example, Williams' Response notes and responds to several arguments in objections Plaintiffs directed to other Defendants, but which Williams believes apply to him as well. (*See* D.I. 75 at 1, 5-10).

[5]    This applies to all § 1983 claims, including municipal liability claims, a/k/a "*Monell* claims," such as Count III. *See, e.g.*, *Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 318 (D.N.J. 2015) (citing *Kitchen v. Dallas Cty.*, 759 F.3d 468, 483 (5th Cir. 2014), *abrogated on other grounds by Darden v. City of Fort Worth, Tex.*, 880 F.3d 722 (5th Cir. 2018); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also Customers Bank v. Municipality of Norristown*, 563 F. App'x 201, 206 n.9 (3d Cir. 2014).

Present Defendants each object that all three of Plaintiffs' counts must be dismissed because the Complaint fails to plead any underlying constitutional injury.[6] (*See* D.I. 67 at 5-7; D.I. 68 at 1-5; D.I. 70 at 5-6). The Report does not clearly address this issue; however, it discusses aspects of it when analyzing the political question doctrine. (D.I. 57 at 32-37). Moreover, Present Defendants each originally argued this point in their Opening Briefs, (D.I. 38 at 7-9; D.I. 40 at 6-8; D.I. 44 at 7-14), Goode and the City further addressed it in their Replies, (D.I. 49 at 2-3; D.I. 51 at 2-4), and Williams does so again in his Response to Plaintiffs' Objections (D.I. 75 at 5). Plaintiffs, in turn, addressed it in their Answering Brief, (D.I. 46 at 37-46), touched on it in their Objections (D.I. 64 at 3-9)[7], and considered it again in their Responses (D.I. 79 at 7-10; D.I. 80 at 8 n.8; D.I. 82 at 10 n.4). The Court considers this issue *de novo*. *See* 28 U.S.C. § 636(b)(1); *Brown*, 649 F.3d at 195.

As noted, "[t]he threshold question . . . is whether [Plaintiffs have] sufficiently alleged a deprivation of a constitutional right." *L.R.*, 836 F.3d at 241; *accord Kaucher*, 455 F.3d at 423 (internal citations omitted). The Due Process Clause of the Fourteenth Amendment states that no state "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Despite this broad language, the Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." *Collins v. City of Harker*

---

[6]     Although this issue also applies to Defendants James M. Baker and William Patrick, Jr., neither Baker nor Patrick squarely raised it in Objections. (*See* D.I. 61, 71).

[7]     Although D.I. 64 purportedly contains Plaintiffs' objections to the Report's conclusions regarding Defendant William Patrick, Jr., and the cited section addresses multiple issues that are not clearly delineated, (*see, e.g.*, D.I. 87 at 6, n.5), the cited section also notes that it responds to objections raised by "Patrick, and others," (D.I. 64 at 3), and at least Williams interpreted this as referring to him and relating to this issue, (*see* D.I. 75 at 1).

*Heights, Tex.*, 503 U.S. 115, 125 (1992); *accord District Attny's Office for Third Judicial District v. Osborne*, 557 U.S. 52, 72 (2009). Moreover, "the purpose of the [Fourteenth Amendment's Due Process] Clause is 'to protect the people *from the State*, not to ensure that the State protect[s the people] from each other.'" *L.R.*, 836 F.3d at 241-42 (quoting *Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)) (modifications in original). Thus, "'[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'" *Id.* (quoting *Deshaney*, 489 U.S. at 197); *accord Kedra*, 876 F.3d at 436 (noting that the "general rule" is "the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens[]" (citations omitted)).

As with most rules, however, this one has at least one exception – "state-created danger" claims, like Count I, which require foreseeable and fairly direct harm, a "special relationship" between the government and the injured party, a government officer's use of authority to create an opportunity for danger, and conduct that "shocks the conscience." *See Kedra*, 876 F.3d at 436; *L.R.*, 836 F.3d at 242. Independent "shocks the conscience" claims like Count II may be another.[8] *See, e.g.*, *Kaucher*, 455 F.3d at 425-36 (discussing "shocks the conscience" and "state-created danger claims separately).[9]

---

[8]    Although Plaintiffs rely on *Kaucher* to insist that they may bring both such types of claims here, (*see* D.I. 82 at 8 n.2), *Kaucher* is somewhat unclear on this point. The Court, however, need not decide now whether municipal employees injured in the course of their employment may bring independent "shocks the conscience" claims which are not "state-created danger" claims; for purposes of this decision, the Court assumes that such an exception exists.

[9]    Municipal liability claims under § 1983, like Count III, "must be based on the 'execution of a government's policy or custom' that actually results in a constitutional violation." *Customers Bank*, 563 F. App'x at 206 n.9 (quoting *Monell*, 436 U.S. at 694–95). Thus, whereas here Count III is based on the same conduct that underlies Counts I and II, failure to adequately plead a constitutional violation for Counts I and II dooms Count III. *See id.*

Yet where the injuries alleged result from a person's municipal employment, such exceptions rub up against another, well-settled Supreme Court edict – that the Due Process Clause is "not a guarantee against incorrect or ill-advised personnel decisions," nor does it "guarantee municipal employees certain minimal levels of safety and security in the workplace" or impose federal duties analogous to those imposed by state tort law. *Collins*, 503 U.S. at 126-130 (citations omitted); *accord Kaucher*, 455 F.3d at 430-31 (concluding that "a failure to devote sufficient resources to establish a safe working environment does not violate the Due Process Clause," noting other Courts of Appeals have found the same (citing *White v. Lemacks*, 183 F.3d 1253, 1258 (11 Cir. 1999); *Walker v. Rowe*, 791 F.2d 507, 510-11 (7th Cir. 1986)), and using this as basis to reject state-created danger and shocks the conscience claims); *id.* at 435-36 (noting Supreme "Court's admonition that we refrain from importing traditional tort law into the Due Process Clause" was "emphasized in *Collins*," but "established well before" (citations omitted)); *see also Eddy*, 256 F.3d at 212-13 ("[W]e understand *Collins* to mean that . . . the Due Process Clause does not reach a public employee's ordinary breach of its duty of care relative to its employees."); *Estate of Carrigan v. Park Cty. Sheriff's Office*, 381 F. Supp. 3d 1316, 1324-25 (D. Colo. 2019).

As another District Court has noted,

> Th[is] friction . . . is particularly acute where a plaintiff is injured in the course of performing law-enforcement, firefighting, and similarly inherently-dangerous duties. These types of employees are exposed to state-created dangers every day – a police officer assigned to arrest an armed and violent suspect or a firefighter instructed to enter a burning building will always face an increased exposure to danger than he or she had before that assignment, that risk will always be known to the supervisors making the assignment, and the decision to issue the directive will always be made in contemplation (and arguably disregard) of that risk.

> Yet it simply cannot be that such decisionmaking by supervisors, even if tragically flawed, bears constitutional implications; to hold otherwise would dramatically expand the scope of judicial scrutiny of first-responder operations and would effectively convert the

> Constitution into the guarantee of workplace safety in violation of
> *Collins*. *See e.g.*, *Waybright v. Frederick Cty.*, 528 F.3d 199, 208
> (4th Cir. 2008).

*Estate of Carrigan,* 381 F. Supp. 3d at 1324-25 (considering similar due process claims stemming

from dangers plaintiffs "encountered . . . as part of their jobs as law-enforcement officials");

*see also White*, 183 F.3d at 1258 (interpreting *Collins* as stating, *inter alia*, that "when someone

not in custody is harmed because too few resources were devoted to their safety and protection,

that harm will seldom, if ever, be cognizable under the Due Process Clause").

In the Third Circuit, a government employee may, despite *Collins*, bring a substantive due

process claim against his employer "if the [municipality] compelled the employee to be exposed

to a risk of harm not inherent in the workplace." *See Kedra*, 876 F.3d at 436 n.6 (citing *Kaucher*,

455 F.3d at 430-31; *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 212-13 (3d Cir. 2001)).[10]

Such behavior is "conscience shocking" and claims based on such behavior are outside the scope

of those prohibited by *Collins*. *See Kaucher*, 455 F.3d at 427-31. Here, therefore, the question is

whether the alleged risks faced by Firefighter Plaintiffs upon which the Complaint is based, were

---

[10]     *See also Kaucher*, 455 F.3d at 430-31 ("forcing . . . plaintiffs to confront unreasonable
dangers at the risk of losing their jobs" when those dangers "cannot be characterized as . . .
inherent in the[ir] workplace" constitutes "arbitrary and conscience shocking behavior
prohibited by substantive due process"; but exposing such plaintiffs to risks that are
"incident to [their] service as . . . employee[s]," "of which [they] w[ere] on notice," and for
which they are not alleged to have been threatened with a penalty, does not); *Estate of
Carrigan*, 381 F. Supp. 3d at 1324-25 (comparing *Kedra*, 876 F.3d 424 with *Witkowski v.
Milwaukee Cty.*, 480 F.3d 511 (7th Cir. 2007) and reaching the same conclusion).

inherent to the Firefighter Plaintiffs' employment and whether they were compelled to face them.[11],[12]

Inherent risks are those to which an employee can expect to be exposed during the course of his employment. A risk is only not inherent if it is "qualitatively different from the types of risks the employee agreed to face when he or she accepted employment." *See Estate of Carrigan*, 381 F. Supp. 3d at 1325 (comparing *Kedra*, 876 F.3d 424 with *Witkowski*, 480 F.3d 511). Thus, an increase in the likelihood of an inherent risk does not necessarily transform it into a non-inherent risk unless the increase is so severe that supervisors know an employee will almost certainly and immediately be injured if he performs his work. *See Kaucher*, 455 F.3d at 430-31 (citing and interpreting *Eddy*, 256 F.3d at 211 n.5); *Eddy*, 256 F.3d at 206-07. For example, the risks of contracting an infection from and being attacked by an inmate are inherent risks for corrections officers, even if the risk of infection is heightened by an outbreak among inmates or the risk of attack is heightened by an inmate's professed intent to assault the officer. *See Kaucher*, 455 F.3d at 430-31 (infection), *Wallace v. Adkins*, 115 F.3d 427, 430 (7th Cir. 1997) (attack). Similarly, the risk of being shot by a prisoner is an inherent risk for a sheriff's deputy assigned to guard him, even if the inmate is improperly restrained, in violation of protocol, and uses the deputy's own gun to shoot him. *See Witkowski*, 480 F.3d at 512-13 (noting also that "someone who chooses to enter a snake pit or a lion's den for compensation cannot complain[,] . . . he is a volunteer rather than a conscript"). On the other hand, the risk of being shot point-blank by a firearms instructor during

---

[11]    For purposes of addressing the Present Objections, the Court applies a "deliberate indifference" standard. As the Complaint is insufficient as currently alleged under such a standard, the Court does not determine whether a higher standard is appropriate.

[12]    As discussed *infra*, Family Members Plaintiffs' claims are derivative claims that are based on the risks faced and harms suffered by Firefighter Plaintiffs.

firearms training is not an inherent risk for a police officer, *Kedra*, 876 F.3d at 436 n.6,[13] nor are the risks of working on a high voltage electrical wire without any training, protective clothing or appropriate equipment inherent risks for an electrical lineman, *see Kaucher*, 455 F.3d at 430-31 (contrasting circumstances in *Eddy*, 256 F.3d 204, from those in *Kaucher*); *Eddy*, 256 F.3d at 206-07. In other words, if the danger or injury of which a government employee plaintiff complains was within the full understanding and contemplation of that employee when he took the job, that employee lacks the necessary basis for a substantive due process claim. *See Estate of Carrigan*, 381 F. Supp. 3d at 1325 (comparing *Kedra*, 876 F.3d 424 with *Witkowski*, 480 F.3d 511).

Plaintiffs argue that inherent risks do not include risks that violate mandatory workplace health, safety, and staffing laws duly enacted by the legislature. (D.I. 79 at 8-10). More specifically, Plaintiffs argue that

> having a "sufficient number" of on-duty fire-fighters minimizes risk. Or to use the factual terms from the Complaint, allows for a 'manageably dangerous' environment – an environment where the risks are manageable because of the sufficient level of staff. Yet defendants' actions, policies and orders flipped this, drastically reducing staffing to crisis levels, thus inversely elevating fire risk, creating an "unmanageably dangerous" environment. (*See, e.g.*, [D.I. 1 ¶ 180; D.I. 46 at 6-7]). That is the environment within which [P]laintiffs had to fight the [September 24, 2016] fire – without the staffing and equipment mandated by the City's own legislative body. Such risks are not inherent.

(D.I. 79 at 9). In support, Plaintiffs cite a Pennsylvania Supreme Court decision for the proposition that "a direct and significant relationship between shift staffing and firefighter safety"

---

[13]     *See also Hawkins v. Holloway*, 316 F.3d 777, 787 (8th Cir. 2003) (agreeing with *Black v. Stephens*, 662 F.3d 181 (3d Cir. 1981) that sheriff pointing loaded weapon at employees "for no legitimate reason" constitutes "threatening deadly force [to] oppress those employe[es]," which "cannot be characterized as an unreasonable risk incident to one's service as an employee in a sheriff's department" (cited with approval in *Kaucher*, 455 F.3d at 430-31)).

exists, which is "unambiguous and powerful." (*Id.* at 9 n.5 (quoting *City of Allentown v. Int'l Ass'n of Fire Fighters Local 302*, 157 A.3d 899, 913-14 (Pa. 2017)); *see also* D.I. 46 at 52-53).

Yet the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") considered a similar case to the one at hand in *Estate of Phillips v. D.C.*, 455 F.3d 397 (D.C. Cir. 2006), and disagreed with arguments similar to those put forth by Plaintiffs. In *Estate of Phillips*, the D.C. Circuit conducted a *de novo* review of a district court's denial of a motion to dismiss claims in a § 1983 action. *Id.* at 402-03. The plaintiffs were firefighters employed by the Washington, D.C. fire department who had been injured or killed while fighting a fire. *Id.* at 398-400. They alleged that the municipality, the fire chief, and other fire department officials violated their substantive due process rights by failing to comply with the department's own standard operating procedures, including by "fail[ing] to follow equipment backup and maintenance procedures . . . and fail[ing] to supply sufficient personnel to the scene" of the fire. *Id.* at 399-400. The fire chief filed a motion to dismiss based on qualified immunity, the district court denied it, and the chief appealed. *Id.* Although presented with a question of qualified immunity, the D.C. Circuit first addressed the issue facing the Court here – "determin[ing] whether the plaintiff[s had] alleged the deprivation of an actual constitutional right at all." *Id.* at 402 (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)), and citing *Lewis*, 523 U.S. at 841 n.5). The key issue in resolving that question was whether the D.C. firefighters' claims were obviated by *Collins*. *See id.*

Similar to Plaintiffs, the *Estate of Phillips* firefighters argued that *Collins* did not bar their claims because they "d[id] not claim constitutional protection from inherent hazards . . . but from [the fire chief's] deliberate indifference to the known need to implement and enforce mandatory safety procedures," which, they argued, was "not inherent to their profession, but rather constituted

'avoidable state-created *additional* risks of injury' unknown to [them] when they joined the Department." *Id.* at 407 (emphasis in original). The D.C. Circuit, however, rejected this theory on the basis that "increase[ing] [a] plaintiff's risk of harm" does not "constitute[ the] conscience-shocking action" necessary to avoid *Collins* and establish a substantive due process violation under § 1983. *Id.* (citing *Washington v. D.C.*, 802 F.2d 1478, 1479, 1482 (D.C. Cir. 1986) (cited with approval in *Kaucher*, 455 F.3d at 435-36); *Fraternal Order of Police v. Williams*, 375 F.3d 1141, 1146 (D.C. Cir. 2004); *Collins*, 503 U.S. at 128)). It then held that the fire chief's "deliberate indifference may have increased the firefighters' exposure to risk, but the risk itself – injury or death suffered in a fire – is inherent in their profession." *Id.* Thus, because "the District is not constitutionally obligated by the Due Process Clause to protect public employees from inherent job-related risks," the D.C. Circuit concluded that the firefighters had not alleged the necessary violation of a constitutional right. *Id.* (citing *Washington*, 802 F.2d at 1479; *Fraternal Order of Police*, 375 F.3d at 1146; *Collins*, 503 U.S. at 128).

Although not binding on this Court, the *Estate of Phillips* decision addresses the question the Court now faces, under the same posture (*i.e.* motion to dismiss), analyzes a very similar factual pattern and arguments, and employs standards and logic that are rooted in Supreme Court precedent and that align closely with those articulated by the Third Circuit, *see, e.g.*, *Kedra*, 876 F.3d at 436 n.6; *Kaucher*, 455 F.3d at 430-31. Thus, the Court finds the reasoning and conclusions of *Estate of Phillips* persuasive.

Plaintiffs' claims suffer from the same defects as those in *Estate of Phillips*, *Kaucher*, *Wallace*, and *Witkowski*. As Plaintiffs state, their claims are not based on allegations that Present Defendants or others created or caused the creation of a new risk to Firefighter Plaintiffs, but, rather, that the action and/or inaction of Defendants, including Present Defendants, increased the

risk of injury or death in a fire faced by Firefighter Plaintiffs.  In other words, like the firefighters in *Estate of Phillips*, Plaintiffs allege that Present Defendants (along with others) exposed Firefighter Plaintiffs to "additional risks of injury unknown to [them] when they joined" the WFD. 455 F.3d at 407.  Yet, as explained, such increased risk is not enough to establish a substantive due process violation where the underlying risk is inherent in the injured parties' profession and is not so extremely elevated that employees will almost certainly and immediately be injured if they carry out their work.

Here, like the risk that a law enforcement officer will be infected, shot, or otherwise injured by a prisoner, and like the risk the *Estate of Phillips* firefighters asserted, the risk Plaintiffs' allege – "injury or death suffered in a fire – is inherent in [Firefighter Plaintiffs'] profession" as firefighters.  *Id.*  Moreover, unlike in *Eddy*, the Complaint explains that the complained-of policies were in place for years before any Wilmington firefighters were allegedly injured as a result, (*see, e.g.*, D.I. 1 ¶ 111-337), belying any contention that the increased risks were so elevated that WFD firefighters were almost certainly and immediately assured injury or death if they carried out their firefighting duties.  Additionally, for the entire time the policies were in place, Firefighter Plaintiffs were aware of the purported increased risk they faced, (*see, e.g.*, *id.* ¶ 116-18, 207-16, 265, 295-98, 312-15 (recounting various warnings issued before September 24, 2016 fire by WFD union regarding dangers of rolling bypass, detailing widespread media attention of challenged policies for years before fire, and describing how, "by early 2016," "[i]t had become widely known and accepted that rolling bypass was inconsistent with and a direct threat to public safety . . . [and] an operational and fiscal failure")), further diluting Plaintiffs' contention that those heightened risks were not inherent to employment at the WFD.

Whether the increased risk resulted from violations of legislative mandates or standards of practice does not alter this conclusion. *See, e.g.*, *Kaucher*, 455 F.3d at 430-31 (holding risk of contracting infection from inmate inherent to corrections officer's employment, even if contraction resulted from "unsanitary and dangerous conditions" at correctional facility); *Witkowski*, 480 F.3d at 512-13 (holding risk of being shot by prisoner inherent to sheriff's deputy's employment, even if shooting results from prisoner obtaining weapon of second deputy because prisoner was improperly restrained, in violation of protocol); *Estate of Phillips*, 455 F.3d at 399-400, 407 (deeming risk of injury or death in fire inherent to firefighters' employment, even if risk increased by supervisors' failure to follow departmental standard operating procedures); *Wallace*, 115 F.3d at 430 (holding risk of injury from inmate attack inherent to corrections officer's employment, even if officer's supervisors promised him protection).

Finally, even if the heightened risks Firefighter Plaintiffs faced and ultimately suffered from could be construed as not inherent to their employment, unlike in *Eddy* or *Kedra*, Plaintiffs have made no allegation or suggestion that Firefighter Plaintiffs were compelled – either with threats of job loss or otherwise – to be exposed to those risks. *Compare Kedra*, 876 F.3d at 436 n.6 (finding plaintiff's claims not precluded by *Collins* because he was injured during "mandatory firearms training" in which [he was] required to be physically present without protection"), *and Eddy,* 256 F.3d at 213 (plaintiff threatened with termination), *with Kaucher*, 455 F.3d at 430-431 (dismissing plaintiffs' claim in part because "there [was] no allegation that [he] was threatened with discharge if he failed to confront a particular danger at the jail").

As such, all of Plaintiffs' claims – as currently alleged – are precluded by *Collins*. Like the Third Circuit's decision in *Kaucher*, this conclusion is "informed and supported by the [Supreme] Court's admonition that we refrain from importing traditional tort law into the Due

Process Clause." *Kaucher*, 455 F.3d at 435-36 (citing *Deshaney*, 489 U.S. at 202 ("[T]he Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation."); *Daniels v. Williams*, 474 U.S. 327, 332 (1986) ("Our Constitution . . . does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."); *Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.")); *see also id.* at 436 (stating with approval that the D.C. Circuit has "noted that under state tort law, an employer may have a duty to provide, and an employee may have a right to demand, a workplace free from unreasonable risks of harm. But '[s]uch tort-law rights and duties . . . are quite distinct from those secured by the Constitution or federal law,' . . . and the Supreme Court has repeatedly warned 'that section 1983 must not be used to duplicate state tort law on the federal level.'" (quoting *Washington*, 802 F.2d at 1480-82)).

This case, like *Estate of Phillips*, involves a tragedy. Lieutenant Christopher Leach, Senior Firefighter Jerry Fickes, and Senior Firefighter Ardythe Hope died, and Firefighter Brad Speakman, Senior Firefighter Terrance Tate, and Lieutenant John Cawthray suffered severe injuries. But as the *Estate of Phillips* court recognized, the Constitution does not provide a basis to address all injuries. *See id.* at 408. The Court has no doubt that, as Plaintiffs argue, (*see* D.I. 46 at 52-53; D.I. 79 at 9 n.5), a relationship exists between shift staffing and firefighter safety.[14] For the reasons articulated, however, that relationship alone does not transform Present

---

[14]     The Court also notes, however, that *City of Allentown*, the Pennsylvania Supreme Court decision upon which Plaintiffs rely for this proposition, is not a substantive due process case, but an arbitration dispute case. *See* 157 A.3d 899. The language Plaintiffs quote was made by the court when determining whether firefighter staffing was a managerial prerogative or could be set by an arbitrator. *Id.* at 914.

Defendants' conduct into substantive due process violations. As currently pleaded, Plaintiffs have alleged what appear to be properly characterized as tort law claims – at base, they contend that Present Defendants, amongst others, breached a duty of care by failing to provide Firefighter Plaintiffs a safe work environment. As at least the Third and D.C. Circuits have noted, "defendants may have a duty under state law to provide a working environment free from unreasonable risks of harm, but they have no duty to do so under the Constitution." *Kaucher*, 455 F.3d at 436 (citing *Washington*, 802 F.2d at 1481); *see also Eddy*, 256 F.3d at 212-13 ("[W]e understand Collins to mean that . . . the Due Process Clause does not reach a public employee's ordinary breach of its duty of care relative to its employees."); *Estate of Phillips*, 455 F.3d at 408 & n.13 (holding that although "the Constitution does not provide a basis for holding [the fire chief] individually responsible," that "is not to say that state law claims are not available to the Firefighters"); *White*, 183 F.3d at 1258 ("[W]e have the reasoning and holding in *Collins* that the city's breach of its duty to provide a safe work environment is not arbitrary or conscience-shocking in a constitutional sense, but instead is 'analogous to a fairly typical state-law tort claim[]'" (citing *Collins*, 503 U.S. at 128)). Thus, notwithstanding the tragedy undoubtedly suffered, none of Plaintiffs' three counts are sufficient as currently alleged.

### B. Whether Family Member Plaintiffs Have Standing

The parties also disagree regarding whether Family Member Plaintiffs have standing in this case. The Report holds that they do not, (D.I. 57 at 31-32), and Plaintiffs object, (D.I. 63). Thus, the Court exercises *de novo* review of this issue. *See* 28 U.S.C. § 636(b)(1); *Brown*, 649 F.3d at 195.

Williams and the City originally argued that Family Member Plaintiffs "appear to assert a constitutional wrongful death action for violation of their own due process rights" and such claims

are not permitted unless "the alleged violation was . . . deliberately directed at the relationship between them," which Plaintiffs fail to allege. (D.I. 44 at 30; *see also* D.I. 38 at 20). Plaintiffs answered and now object that Family Member Plaintiffs do not assert *independent* § 1983 claims based on any personal constitutional injury but, rather, properly assert "derivative" wrongful death claims based on the deaths of the deceased Firefighter Plaintiffs. (*See, e.g.*, D.I. 46 at 92; D.I. 63 at 4-5). The City counters that such claims do not exist. (D.I. 78 at 4-5).

A wrongful death action is an action for damages arising out of the death of an injured party, but which action benefits certain relatives of the deceased (e.g., children, parents, spouse, etc.) rather than the deceased's estate. *See* 10 Del. C. § 3721-25. Such claims permit the recovery of damages suffered by those relatives as a result of the deceased's death. *Id.* § 3724-25. In other words, wrongful death claims are "derivative" claims in that they are based on the injury suffered by the deceased rather than any injury suffered by the claim beneficiaries (*i.e.* the deceased's entitled relatives). Family Member Plaintiffs' claims are such "derivative" claims – they are based on the constitutional injuries allegedly suffered by the deceased Firefighter Plaintiffs. (*See* D.I. 1 ¶ 11, 18, 23 (stating Family Member Plaintiffs are bringing the "§ 1983 wrongful death action[s]"); *id.* ¶ 10, 17, 22, 460, 463 (describing traditional wrongful death damages as those being sought by Family Member Plaintiffs); *id.* ¶ 481-515 (tying three counts to alleged violations of Firefighter Plaintiffs' rights)).

The representatives of a deceased's estate may bring § 1983 wrongful death claims. *See, e.g.*, 10 Del. C. § 3724; *Balas v. Taylor*, 567 F. Supp. 2d 654, 661-62 (D. Del. 2008); *see also Becker v. Carbon Cty.*, 177 F. Supp. 3d 841, 853-54 (M.D. Pa. 2016) (noting "[i]t is clear that Pennsylvania law provides for certain damages under the . . . wrongful death act[] if entitlement . . . is demonstrated and that Section 1983 does not provide for a specific remedy," and remaining

"[un]persuaded" at the motion to dismiss stage "that application of the wrongful death damages is inconsistent with Sections 1983 and 1988."); *Moyer v. Berks Heim Nursing Home*, No. 13-CV-4497, 2014 WL 1096043, at *3 (E.D. Pa. 2014) ("[S]ome courts have reasoned that the decedent's survivors are also victims of the civil rights infringement; therefore, a wrongful death action must be allowed to give the civil rights statute full effect[]" (citations omitted)).

Indeed, despite its argument that such claims cannot exist, the City appears to agree. (*See* D.I. 78 at 4-5 n.3 ("The City did not argue that § 1983 claims cannot be brought by family members who are representatives of the estates of the deceased firefighters, in that capacity. . . .")).

The only question for the Court, therefore, is whether the asserted wrongful death claims may be brought by Family Member Plaintiffs in their individual capacities or must be brought by the representative(s) of the deceased Firefighter Plaintiffs' estates.

The Court is cognizant of "the general rule that a litigant may only assert his own constitutional rights or immunities" and the principle that one cannot typically sue for the deprivation of another's civil rights. *O'Malley v. Brierley*, 477 F.2d 785, 789 (3d Cir. 1973) (citing, *inter alia*, *McGowan v. Maryland*, 366 U.S. 420, 429 (1961) and *United States v. Raines*, 362 U.S. 17, 22 (1960)); *see also Stukes v. Knowles*, 229 F. App'x 151, 152 n.2 (3d Cir. 2007); *Moyer*, 2014 WL 1096043, at *3. The administrators of the deceased Firefighter Plaintiffs' estates, however, are also part of this suit, (*see* D.I. 1 ¶ 8-24), and their standing is not challenged. Thus, whatever the Court decides, the wrongful death claims could likely remain in the suit if Plaintiffs choose to amend and re-file.

Nevertheless, Plaintiffs have not cited a single case in which a wrongful death claim was maintained by the beneficiary of such a claim rather than the representative of the deceased's estate and the Court has similarly not found such a case. Thus, given the Third Circuit's guidance, the

Court finds that Family Member Plaintiffs' lack standing to bring § 1983 wrongful death claims in this action. Such claims, however, may be brought by the representatives of the deceased Firefighter Plaintiffs' estates, in that capacity.

Accordingly, the Complaint will be dismissed because Plaintiffs have failed allege the necessary underlying constitutional violation for any of the three counts.[15],[16] Additionally, Family Member Plaintiffs lack standing to bring § 1983 wrongful death claims. An appropriate order will follow.

---

[15]    Additionally, many of the issues and findings made in the Court's other related decisions in this matter (D.I. 84, 87), apply, to varying degrees, to Plaintiffs claims against Present Defendants. For example, Plaintiffs' Complaint also fails to state a claim for Count I against Present Defendants at least because it fails to allege the necessary special relationship, (*see* D.I. 87 at 10-16), and does not state a claim for Count III against Williams and Goode at least because Count III is a *Monell* claim and both Williams and Goode are sued in their individual capacities. (D.I. 1 ¶ 26, 26; *see also* D.I. 57 at 24 n.156; D.I. 84 at 12-13; D.I. 87 at 20). Indeed, as to this latter point, Plaintiffs appear to agree. (*See* D.I. 46 at 41 n.13 ("*Monell* . . . , where the Supreme Court held that municipalities are subject to liability under § 1983 . . . is the basis of Count III of this case against the City defendant.")). Additionally, because "Plaintiffs have not adequately alleged a violation of a constitutional right against [Williams or Goode]," as with Defendant Patrick, Williams and Goode "remain[] entitled to qualified immunity." (*See* D.I. 87 at 20-21).

[16]    Having disposed of all counts in the Complaint, the Court does not address the parties' remaining objections.